### THORSON and others *v.* PETERSON and others.

*(Circuit Court, N. D. Illinois.  January 6, 1883.)*

**SEAMEN'S WAGES—VOYAGE BROKEN UP.**

Where seamen shipped for a round trip, and by reason of a collision with another vessel the voyage was broken up, but they were induced by the master to proceed with the schooner to the port of delivery, and on arriving at the port of delivery they refused to aid in discharging the vessel, and claiming their discharge, which was denied by the master, they left and returned to the port of departure, *held*, that the vessel having been laid up at a distant port for the winter, and unable to complete the voyage till spring, that the seamen were entitled to their discharge without completing the round trip, and to compensation for services actually rendered, based upon the principles of a *quantum meruit*.

*Mr. Condon*, for libelants.

*Mr. Kremer*, for defendants.

DRUMMOND, C. J. This was a libel filed in the district court to recover of the owners of the schooner Winnie Wing compensation for services rendered by one of the libelants, as mate, and the other as seaman, on board of the schooner. The libelants shipped on the schooner for a round trip from Chicago to Pentwater, Michigan, and back to Chicago in November, 1880. The seaman was to receive $20 for the round trip, but the mate, as the preponderance of the evidence shows, was to be paid by the day. The district court found there was due from the defendants to the mate the sum of $82.75, and to the seaman the sum of $58.50, for which a decree

was rendered, and from which the defendants appealed to this court. The libelants shipped on the thirteenth of November, on which day the schooner left Chicago, but on the following day a collision took place between the schooner and another vessel, by which the schooner was dismasted and rendered helpless, but after some days on the lake was towed into South Haven. The seaman then requested a discharge from the captain of the schooner on the ground that the voyage was broken up. The captain, however, declined to discharge him, and finally agreed, if he would proceed to Pentwater, he would do what was right by him, and accordingly the seaman, as well as the mate, did proceed to that point. They then claimed that they were entitled to their release without helping to discharge the vessel, and, as the voyage had been broken up, that they both had a right to so much a day for their services rendered, and the seaman claimed, and the captain yielded to the claim, that he was entitled to the amount of expense necessary to return to Chicago. The captain offered to pay both the mate and the seaman on the assumption that an agreement had been made for so much for the round trip, and he insisted that they should remain and aid in the discharge of the cargo. They, however, left the vessel, and the question is whether the defense is made out which claims they have forfeited all compensation for services rendered because of the facts stated. The round trip was not made; the schooner was disabled and could not make it, and remained at Pentwater during the winter.

It could hardly be expected, I think, that the libelants, in order to complete the contract as claimed by the schooner, should remain until the schooner had made the round trip in the following spring. It seems clear, under the circumstances, that so far as the round trip was concerned, at any rate, the voyage was broken up on both grounds: in the first place, because the schooner was dismasted and thereby became incapable of making the round trip; and in the second place, the schooner was obliged to remain at Pentwater during the winter. Under these circumstances, the question is whether the libelants were not entitled to a reasonable per diem compensation for the time during which they rendered service. I think they were. The contract implied between the captain and the seamen at South Haven, in consequence of which the latter proceeded to Pentwater on the schooner, was one independent entirely of that which was made at Chicago. It may be true that the collision was not the fault of the schooner, and there is certainly nothing to indicate that it was the

fault of the libelants, and considering all the facts in the case it seems to me not unreasonable to require the defendants to pay the amount which was decreed by the district court. The services were actually performed. The proof seems to indicate that the seaman, at any rate, was willing to release the schooner from the contract at South Haven, and I hardly think that the facts of the case warranted the defendants in taking an appeal from the decree of the district court. That decree is therefore affirmed.