# Wagner v. H. W. Jayne Chemical Co., Appellant.

*Negligence—Risk of employment—Injuries by fumes.*

In an action to recover damages for personal injuries alleged to have been sustained by inhaling fumes of nitric acid, testimony on behalf of the plaintiff tended to show that he was a common laborer employed on outside work of defendant's establishment, that he was ordered by defendant's superintendent to do some work in connection with the process of making dinitro-benzole; that poisonous fumes were evolved by this process; that experiencing discomfort from them he left the work, declaring that " he could not stand it; " that the superintendent assured him that the fumes would not hurt him, and ordered him to return to his work; that he obeyed the order, but was soon obliged to go home seriously ill; that he had no previous knowledge of the danger to which he was exposed, and was not warned of them by his employer. Expert testimony was conflicting as to whether plaintiff's illness was or could have been produced by the fumes. There was some evidence that plaintiff had knowledge that the fumes of nitric acid were dangerous. It also. appeared that they were disagreeably apparent to the senses. *Held*, that it was proper to submit the case to the jury on the question of defendant's negligence. *Held also*, that there was not such evidence of contributory negligence as would justify the court in directing a verdict for defendant: Beittenmiller' v. Brewing Co., 22 W. N. 33, distinguished.

| 147 | 475 |
|---|---|
| 157 | 323 |
| 147 | 475 |
| 190 | 119 |
| 147 | 475 |
| f198 | 318 |
| 147 | 475 |
| f 21 SC | 547 |
| 147 | 475 |
| 214 | 619 |
| 147 | 475 |
| 41SC | 301 |

Argued Jan. 19, 1892.   Appeal, No. 3,· July T., 1891, by defendant, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1889, No. 98, on verdict for plaintiff, Thomas Wagner. Before ·PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Trespass to recover damages for personal injury alleged to have been caused by the inhalation of poisonous fumes.

The facts appear by the opinion of the Supreme Court.

Defendant's points which were refused were as follows :

" 1. There is no evidence that the work in which the plaintiff was employed at the defendant's works on August 26th, 27th, and 28th, 1889, required any special skill or was different from that ordinarily performed by laboring men in such works, and in the absence of such evidence the plaintiff cannot recover, and your verdict should be for the defendant." [1]

" 2. There is no evidence in this cause that the fumes of nitric acid ·from the " dinitro-benzole," in handling which the plaintiff was employed, were any more dàngerous ·than the fumes

from that acid made or used in other parts of said works, or such as required special instructions to enable an ordinary laborer to guard himself against, and in the absence of such evidence the plaintiff cannot recover, and your verdict should be for the defendant." [2]

" 4. There is no evidence in this case that the fumes of nitric acid, the inhalation of which are alleged to have produced the plaintiff's illness, are imperceptible to the senses, and not apparent to any man, even although an unskilled laborer, and if the same were apparent to the plaintiff, then he was bound to take notice thereof without special instructions, and he cannot recover in this action, and your verdict should be for the defendant." [3]

" 5. The plaintiff alleges that on the 28th of August he was taken ill with jaundice, or a disease the symptoms of which resembled jaundice, and as there is no competent evidence in the case that the fumes to which the plaintiff was exposed will produce jaundice or any disease similar thereto, the plaintiff cannot recover in this case, and your verdict should be for the defendant." [4]

" 6. Under all the evidence in this case the verdict of the jury should be for the defendant." [5]

Judgment and verdict for plaintiff for $3,000.

Defendant appealed.

*Errors assigned* (1–5) were instructions, quoting points.

*Silas W. Pettit, John R. Read* with him, for appellee.—The injuries sustained by plaintiff was one of the risks of his employment: Thorn v. Ice Co., 46 Hun, 497; Holland v. Tacumsa Mills (Mass.), 23 N. E. Rep. 751; Crowley v. Pac. Mills, 148 Mass. 228; Lehigh Coal Co. v. Hayes, 128 Pa. 294; Mansfield Coal Co. v. McEnery, 91 Pa. 185; Sykes v. Packer, 99 Pa. 465.

The uncontradicted evidence showed that no other person working at the apparatus for making dinitro-benzole in the defendant's factory had ever been made sick by it or suffered any injurious consequences therefrom, and therefore there was no duty on the defendant to notify the plaintiff of a risk or danger of which it had no knowledge : Melchert v. Brewing Co., 140 Pa. 448–453; Allegheny Heating Co. v. Rohan, 118 Pa.

223; Railroad Co. v. Hughes, 119 Pa. St. 301; and see Lehigh Coal Co. v. Hayes, 128 Pa. 294; Sykes v. Packer, 99 Pa. 465; Koontz v. Railroad Co., 65 Iowa, 226; Sjogren v. Hall, 53 Mich. 274; Wabash Ry. Co. v. Locke, 112 Ind. 404; Loftus v. Ferry Co., 84 N. Y. 459; Craighead v. R. R. Co., 25 N. E. Rep. 387; Allison Mfg. Co. v. McCormick, 118 Pa. 519.

*John G. Johnson, Lincoln L. Eyre, B. F. Hughes* with them, for appellee.—Where there is any doubt whether a servant is acquainted with the risk of his employment or ought to have been, the determination of the question is for the jury. Rummel v. Dillworth, 11 Pa. 343; Patterson v. Pittsburgh & Connelsville R. R., 76 Pa. 393; Wharton on Negligence, sec. 210; Wood's Master & Servant, sec. 349; Pantzar v. Mining Co., 2 N. E. Rep. 24, and 99 N. Y. 376; McGowan v. La Plata Co., 9 Fed. Rep. 861; Cook v. St. Paul R. R., 34 Minn. 45; 2 Thompson on Negligence, 1009; Tissue v. B. & O. R. R., 112 Pa. 96; O'Connor v. Adams, 120 Mass 431.

OPINION BY MR. JUSTICE HEYDRICK, March 7, 1892.

The several assignments of error in this case, except the fourth, raise the question whether there was any evidence which ought to have been submitted to the jury.

According to the appellant's statement, it is engaged in the manufacture of a dye stuff called dinitro-benzole, which is made by putting liquid nitro-benzole into a receiver, and pouring nitric acid and sulphuric acid into it and mixing them, in which process heat is produced by chemical action. The liquid is then allowed to cool, when the dinitro-benzole settles to the bottom, and is separated from the acids as far as practicable, and then subjected to another process in which heat is mechanically applied.

The testimony on the part of the plaintiff, if believed, showed that he was a common laborer; that he had been employed by the defendant occasionally, prior to the injury complained of, to do such work outside of the establishment as unloading boats, hauling barrels and digging; that on the 29th of August, 1889, he was re-employed and set to work at some common labor as before, but soon after ordered to do some work in connection with the process of making dinitro-

benzole ; that poisonous fumes were evolved by that process, which he inhaled ; that, experiencing discomfort therefrom, he left the work, declaring that he "could not stand it;" that the defendant's superintendent assured him that the fumes would not hurt him, and ordered him to return to his work ; that, relying upon the superintendent's assurance, he obeyed his order, but in a few hours became so sick that he was obliged to go home, and was thereafter under a physician's care several months ; and that he had no previous knowledge of the dangers to which he was exposed, and was not warned of them by his employer. The testimony of his physician, as well as that of three experts called by him, strongly tended to show that his sickness was the result of inhaling the fumes evolved in the manufacture of dinitro-benzole. There was also testimony tending to show that the defendant knew that these fumes were poisonous, and had previously so warned at least one other workman.

It is a well settled rule of law that an employee will be deemed to have assumed all the risks naturally and reasonably incident to his employment, and to have notice of all risks which, to a person of his experience and understanding, are, or ought to be, open and obvious. This is a reasonable rule, for, when a man seeks employment in any particular department, of either industrial or intellectual activity, he thereby represents himself to be qualified by the necessary experience or learning, as the case may be, for the performance of the duties which he proposes to assume, and such experience or learning necessarily brings a knowledge of the ordinary risks of the employment. Thus, one who holds himself out as a physician is deemed to thereby represent that he possesses such learning and skill as to reasonably qualify him for the duties of his profession; and that learning will teach him the danger of exposure to contagious and infectious diseases. But when the reason of the rule fails, the rule itself ceases to have any application. And therefore, while the physician would have no ground of complaint if his health should be permanently impaired by reason of exposure at the call of a patient, to a contagious or infectious disease, he might recover damages for the slightest injury suffered in consequence of a defect in the floor of the house which he was invited to enter, unknown to him but which was

know or ought to have been known to his patron; and this because there is nothing in the science of medicine, in which he professes to be learned, to affect him with notice of the latter danger. Neither is there anything in the employment of a common laborer that presupposes any scientific knowledge, such as a knowledge of the properties of acids, or that poisonous fumes are likely to be evolved in a manufacturing process in which nitric acid is used; and for that reason, the law does not presume that such laborer either possesses or professes such knowledge. And, although some of the work required to be done in the manufacture of dinitro-benzole, may be mere drudgery, it cannot be said to be of such ordinary character in its surroundings as to justify a presumption that a common laborer has, by experience, acquired a knowledge of its attendant dangers. Without some such previous knowledge, either scientific or experimental, the dangers, if any there be, of exposure to the fumes of nitric acid would not be open and obvious, and the laborer could not, with propriety, be deemed to have assumed such risks unknown to him as are naturally and reasonably incident to his employment: Rummell v. Dilworth, 111 Pa. 343.

On the other hand, it is equally well settled that an employer is bound to exercise reasonable precaution against injury to his employees while they are in his service and obeying his orders. Not only must he provide suitable implements and means with which to carry on the business which he sets them to do, but he must warn them of all the dangers to which they will be exposed in the course of their employment, except those which the employee may be deemed to have foreseen as necessarily incidental to the employment in which he engages, or which may be open and obvious to a person of his experience and understanding, and except, also, such as the employer cannot be deemed to have foreseen. And the employer will be presumed to be familiar with the dangers, latent as well as patent, ordinarily accompanying the business in which he is engaged. Authorities upon these points may be found in great abundance in the notes to §§ 185 to 203 of Shearman and Redfield on Negligence.

Keeping these principles in mind, it will be seen that the learned court below could not have given binding instructions

to the jury to find for the defendant, without committing grave error. There was testimony of witnesses, apparently entitled to the highest respect, tending to show, on the one hand, that the fumes of nitric acid are poisonous, and, on the other hand, that they are not. That the question thus raised was, if material, properly submitted to the jury cannot be doubted. That it was material is shown by the sharpness of the contention over it, for, if learned gentlemen, who have made it the subject of special study and investigation, cannot agree whether it be injurious to the human system to inhale such fumes, it cannot be that the danger of exposure to them is so open and obvious to a common laborer that he should be deemed to have voluntarily assumed the risk as one incident to his employment. There was also evidence, possibly open to criticism, but which could not be withheld from the jury, tending to show that the defendant had knowledge of the dangerous character of the nitric acid fumes.

The evidence of contributory negligence, coming from the plaintiff, was not sufficient to justify the court in directing a verdict against him. It does not appear that when he quit work, saying, " I can't stand this," he knew, or had reason to believe, that the fumes would do him permanent injury. When the superintendent assured him that they would not hurt him, he had a right to rely on that assurance, and return to his work : Patterson v. R. R. Co., 76 Pa. 393. In Beittenmiller v. Brewing Co., 22 W. N. 33, upon which the defendant relies, the plaintiff knew the danger to which he was exposed ; he had tested it, and retreated from it. The superintendent did not tell him that ammonia would not hurt him, but, when directing him to return to work, impliedly admitted the danger by saying that the ammonia was not then so bad. The statement was not true, and the moment the plaintiff entered the room that fact must have been so obvious that it could not escape the attention of the dullest person, and therefore, when he continued his work, he assumed the risk.

The fact that the fumes of nitric acid may be perceptible to the senses is conclusive of nothing. The court could not say, as matter of law, that every odor is a warning of danger.

The judgment is affirmed.