### DELAWARE & HUDSON CO. v. BEEMER.

(Circuit Court of Appeals, Third Circuit. July 22, 1909.)

#### No. 22.

1. MASTER AND SERVANT (§ 284*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—SCOPE OF EMPLOYMENT.

Whether a servant was acting within the scope of his duty when injured is usually for the jury, in an action for the injury, especially where, by reason of the installation of new machinery shortly before his injury, his duties had been changed.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1005; Dec. Dig. § 284.*]

2. MASTER AND SERVANT (§§ 286, 289*)—MASTER'S LIABILITY FOR INJURIES TO SERVANT—ACTIONS—QUESTIONS FOR JURY.

Plaintiff was a car loader at the coal breakers of defendant railroad company and was injured by having his feet caught in a cog gearing while executing the orders of the boss loader directing him to clear a screen which had become clogged. The gearing was part of the machinery for operating a new conveyor for the screenings which had just been put in. Before that the screenings which passed through the screens in the loading chutes fell into small cars, and the employé operating such cars had attended to the clearing of the screens, and plaintiff had never before been inside the breaker, where he was required to go. The place was filled with coal dust and dark, and no lights could be used. The cogs were not covered, and the noise prevented their being heard. Plaintiff did not know their position and was given no warning or instructions. *Held*, that the questions of defendant's negligence and plaintiff's contributory negligence were both properly submitted to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1010–1050, 1089-1132; Dec. Dig. §§ 286, 289.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the Circuit Court of the United States for the Middle District of Pennsylvania.

Everett Warren, Welles & Torrey, and John P. Kelly, for plaintiff in error.

R. L. Levy and Margan Kaufman, for defendant in error.

Before GRAY and BUFFINGTON, Circuit Judges, and BRADFORD, District Judge.

BUFFINGTON, Circuit Judge. In the court below, Beemer, herein called "plaintiff," recovered a verdict for personal injuries against the Delaware & Hudson Company, herein called "defendant." On entry of judgment defendant sued out this writ assigning for error: First, that there was no evidence of negligence on the part of defendant to submit to the jury; and, secondly, that plaintiff was guilty of contributory negligence.

The record in this case, as originally sent up from the court below, failed to disclose the entry of judgment upon the verdict. Since the hearing, however, a certificate of the entry of such judgment has been sent up by the clerk as a supplement to the transcript of record on file. This supplementary record we direct to be filed, and we call the attention of the clerks and the profession to the necessity of having hereafter such judgments appear in proper form in the record.

At the time of the accident, Beemer was one of defendant's loader gang, which, under the directions of Kronic, its boss loader, worked at railroad cars at defendant's breaker. The duties of the gang were to move cars opposite the mouth of the proper chute, open the chute gate, and allow coal to run from the breaker bins into the cars. Just before the accident a car was being filled from a grate-coal chute. In front of this chute gate, and in the bottom of the pathway that led therefrom to the car, was a lip screen. The meshes of this screen were such that coal below grate size, together with all culm and rubbish, fell through the lip screen into an inclined runway. This runway led to a transverse trough, through which an endless scraper conveyor pushed the screenings to an elevator. By the latter they were carried to the top of the breaker and there subjected to further assorting. This conveyor was a new installation. Prior to its use small cars received the droppage through the lip screens and carried it to the elevator. The lip screens and runway clogged frequently. The obstruction had to be removed at once, otherwise the contents of the railroad car might be rejected by reason of the nonuniformity of its coal or unscreened rubbish. Under the old system, as soon as a stoppage occurred, the driver of the small car dislodged it and relieved the lip screen. When the conveyor system supplanted the small car system, it was expected to automatically prevent cloggings; but such did not prove the case. As a natural result, and because no other provision was made to remove these obstructions, it became part of the car loader's work to remove them. To do this it was necessary for him to enter the breaker where hitherto he had no occasion to go.

It was contended by defendant that it was no part of Beemer's work as a car loader to enter the breaker, and that in doing so and

undertaking to clear the screen he was a mere volunteer and outside the line of duty. We cannot so regard him. Scope of duty is generally a question for a jury (Labatt on Master & Servant, § 634), and in view of the changed situation caused by the substitution of the conveyor for the small car system, the question of the broadened scope of a car loader's duty with relation to freeing the lip screen was peculiarly one for the jury. That question was properly, and without objection or exception to the language used, submitted, and for the purpose of this case we must regard the act of Beemer in entering the breaker and trying to free the screen as in the line of duty. When the stoppage in question occurred all Kronic said to Beemer was:

"You go in and shove that culm down. I am going in there every time."

Kronic had full charge of this branch of the work, and the plaintiff was working under his immediate and sole direction. The plaintiff was not told how he was to remove the clog, nor was any warning given him of any danger he would, in doing so, encounter.

Now, in view of the obligation of the master to warn an employé of latent danger known to him (Wagner v. Jayne Chemical Co., 147 Pa. 479, 23 Atl. 772, 30 Am. St. Rep. 745; Rilston v. Mather [C. C.] 14 Fed. 743; Labatt on Master & Servant, § 408; Felton v. Girardy, 104 Fed. 130, 43 C. C. A. 439), we think Beemer was justified in assuming the master would so warn him, and, while he could not shut his eyes to obvious dangers, still he had a right to assume the master had performed his duty of notification of known latent dangers (Choctaw, O. & G. R. Co. v. McDade, 191 U. S. 67, 24 Sup. Ct. 24, 48 L. Ed. 96; Norfolk v. Beckett [C. C. A.] 163 Fed. 479), and, because the master had not warned him, Beemer was justified in assuming the master had placed none there. This was a double breaker. It contained 24 chutes and extended approximately 80 feet along the railroad. It had 2 separate conveyor systems; each extending from either breaker end to the center. On the side of the conveyor systems nearest the railroad were the lip screen runways, through which the screenings ran to the conveyor trough. On the other side of the conveyors, and about 2 feet lower, was a walk extending from the south to the north breaker door. Near the center of the breaker this walk turned at right angles away from the conveyor and led up a cleated incline for 6 feet. It then turned back at right angles for 6 feet, then turned again at right angles, and led down a cleated incline for 6 feet to its original line. From there the walk extended parallel to the duplicate conveyor to the north door. Around the walk, where it debouched into the three-sided square, and for about 6 feet on each side of such square, was a guard rail some 3 feet high. This rail thus faced all turns in the pathway. The gearings and cogs which brought motive power to the two conveyor systems were located in this three-sided square and in that portion of the breaker opposite the guard rail. The cogs were not covered in any way. Coal dust practically obscured all light inside the breaker, and its liability to explode forbade the use of lights. The noise caused by

the scrapers and the rattling of the coal in the chutes prevented one from hearing any cog noise. Both sight and sound were unavailing to detect their presence. Indeed, the testimony of the oilers is that when they straddled the railings and moving conveyors, as they did several times a day, or went beyond them to oil the bearings of these cogs, they could see nothing of the latter, but they felt carefully with their hands for their bearings, and thus oiled them.

The clogged grate-coal chute in question was near the center of the breaker. Beemer had previously started a clog in a pea-coal chute, but it was over near the entrance. There were no cogs near it, and he did not know cogs were used in the new conveyor system. On that occasion he stood on the walk and used a scraper to loosen the clog. Not finding a scraper on the walk on the morning in question, he says he supposed it was hanging near the grate-coal chute and started in for it. He straddled the railing and conveyor, held to an overhead timber, walked on a beam which he found with his foot, and started to feel his way over to the screen. He reached it safely, but, not finding the scraper there, turned to come out. While doing so one foot was caught in the cogs, which he had not seen or heard. He was whirled around, and his other foot also caught. Both were subsequently amputated.

Under these facts we are asked to say there was no evidence of negligence on the part of the defendant to submit to the jury, and that as a matter of law the plaintiff was guilty of contributory negligence. We cannot so do. Under the verdict, we must, as noted above, regard Beemer as acting in the line of duty in trying to free this screen. He was sent to do this and was given no directions or warnings. He had no knowledge of the presence of the cogs and could neither see nor hear them. While the guard rail was notice of danger, yet such danger as warranted the presence of a guard rail he saw in the conveyor. This he carefully avoided, and it had nothing to do with the accident. Such being the case, we cannot say the rail impliedly supplied the place of further notice which the defendant company was bound to give of an additional latent danger of which it knew. The duty of the master was to give notice of every, not of one, danger. Under the circumstances we think there was evidence from which the jury might infer negligence on the master's part.

So, also, we cannot, as a matter of law, say the plaintiff was guilty of contributory negligence. He was told to start the obstruction. He was given no directions. All work about a coal breaker is to a degree dangerous, and such ordinary, recognized risks Beemer assumed; but if, in addition to the ordinary ones, there were, in the pathway of what he was told to do, hidden dangers occasioned by this new construction the master had installed, the law required he should be told of them, and, in the absence of such warning, he was justified in assuming they did not exist. He knew from his statement Kronic had safely done this work before, and he was justified in supposing he also could do the same thing. When he could not find a scraper, he started to get it back by the screen, where he thought it was hanging. As a pathway he selected a large beam, which the photographs

show started inward from where he stood on the walk. He could well assume this beam extended across and made a pathway for him to the screen, and such, indeed, proved to be the case. Steadying himself by holding to an overhead timber, and feeling his way on the underfoot beam with his feet, he reached the screen in safety; but in coming out he evidently missed the beam and stepped into the clutch of the unprotected, unseen clogs. As stated above, all work about a breaker is in a measure dangerous, and the most careful man has to run risks. Where, as here, explosion forbade light, and darkness and noise prevented the use of any sense save touch, it was clearly a case where the province of 12 men, with their varied and wider experiences, rather than 1 man, with more limited observation, to say whether Beemer did or failed to do what a careful man, called to do what he was by his employer, might, under the circumstances, reasonably have done. We think the facts were such that, in the diverse inferences different men draw, reasonable ones might conclude that Beemer tried to do the work he was directed to do in the only way that seemed open to him in view of the means and facilities available, and that in doing it he was guilty of no lack of care the circumstances required.

The judgment is therefore affirmed.