# Smith *v.* Philadelphia Rubber Works Company, Appellant.

*Negligence—Master and servant—Dangerous machinery—Finishing machine—Inexperienced employee—Duty to instruct—Evidence—Relevancy—Case for jury.*

1. A finishing machine such as used in a rubber reclaiming plant, is dangerous machinery and should be equipped with all safety devices in ordinary use, and the questions whether a machine was or was not properly equipped in this respect, or could not reasonably be used for the purpose for which it was intended with such attachments, are for the jury; and in an action for injuries sustained while operating such machine, evidence relating to the feasibility of using safety devices, such as guard rails and attachments by which it could speedily be stopped, is admissible.

2. In an action against a rubber reclaiming company to recover damages for personal injuries sustained by plaintiff while feeding rubber sheet into a roll of a finishing machine, the case is for the jury where there is evidence that plaintiff was inexperienced, that he had been working at the machine only four days and at the time of the accident was in full charge of it, that the machine required a workman of experience to operate it, that slippery powder had been allowed to accumulate on the floor for several days, and as plaintiff reached under the roll with his right hand to grasp the sheet which had passed through, his foot slipped on the powder and his left hand was caught and drawn into the roll, and it appeared that the machine could not be stopped immediately because the stopping appliance was tied with a wire, and the fact that it was so tied was known to the defendant.

Argued Jan. 19, 1915. Appeal, No. 152, Jan. T., 1914, by defendant, from judgment of C. P. No. 1, Philadelphia

Co., June T., 1911, No. 1584, on verdict for plaintiff, in case of Leonard H. Smith v. Philadelphia Rubber Works Company.   Before MESTREZAT, POTTER, STEWART, MOSCHZISKER and FRAZER, JJ.   Affirmed.

Trespass to recover damages for personal injuries. Before BREGY, P. J. ·

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $7,000 which the court reduced to $4,000 and entered judgment on the reduced verdict.   Defendant appealed.

*Errors assigned* were rulings on evidence, instructions to the jury, the refusal of the court to direct a verdict for defendant and to enter judgment for defendant n. o. v.

*W. W. Smithers,* for appellant.

*W. W. Montgomery, Jr.,* of *Roberts, Montgomery & McKeehan,* with him *Wm. J. Lawson,* for appellee.

OPINION BY MR. JUSTICE FRAZER, March 15, 1915:

Defendant company is engaged in the business of reclaiming rubber, and plaintiff was one of its employees. On March 3, 1911, while engaged in operating a finishing-machine in defendant's mill, plaintiff's left hand was drawn between the rolls of the machine and injured to such an extent as to require amputation of almost the entire hand.   This action is to recover damages for the injury, and the negligence alleged on the part of defendant is, (1) failure to provide a reasonably safe place to work, and reasonably safe and proper appliances with which to work, and (2) failure to instruct plaintiff in the operation of the machine and its dangers.   In the court below a verdict was rendered in favor of plaintiff, and this appeal followed the court's refusal to either

grant a new trial or enter judgment for defendant non obstante veredicto.

The evidence shows that plaintiff had been in defendant's employ for about three weeks preceding the accident; that during the first two weeks he operated a "washing-machine," and about four days prior to the accident was transferred to another department and placed under an experienced operator to receive instruction necessary to fit him to operate a finishing-machine. According to the testimony of the foreman of the shop "anybody can run a washer, but it takes a mechanic to run a finisher."

A finishing-machine consists of two parallel rollers forty-two inches long and sixteen inches in diameter, and placed horizontally at about three and one-half feet from the floor. These rollers revolve toward each other at the rate of thirty-two revolutions to the minute. A number of such machines are placed in a row, and are driven by power received from the engine room located a short distance from the machines. In the discharge of his duty, the operator obtains crude material in a form similar to a roll of felt paper at a preparing mill which stands a short distance from the finishing-machine, and one end of the sheet of crude rubber he inserts between the rollers of the finishing machine; and, guided by the operator, the material is permitted to unroll and wrap around the roller nearest the operator. The continued wrapping and pressing of the material between the revolving rollers welds the whole into a solid mass, which, at the proper time, is removed from the roller in the form of a sheet, and is in readiness for the next step in the process of manufacture. To prevent sheets of rubber, when taken from the finishing-machine, from sticking together, each sheet is dusted or sprinkled with a smooth slippery white powder, known by the employees as "soapstone powder," "talcum powder" and "whiting." The powder, as the work progresses, to some extent falls to the cement floor of the factory; these accumulations

are swept up and removed by employees at intervals. Defendant's contention was that the floor is swept twice each day, while plaintiff testified it had not been swept during the four days he was receiving instruction at the machine.

Upon obtaining a roll of crude material at the preparing mill, plaintiff inserted one end of the rubber between the rollers and permitted the end to pass through into a box or trough beneath, and stooped to reach the end of the sheet with his right hand for the purpose of bringing it through and again inserting it between the rollers; at the same time balancing the roll of crude material on top of the rollers of the machine with his left hand. In doing so the powder on the floor caused his foot to slip, resulting in his left hand being caught in the roll of crude rubber and drawn into the machine, causing the injury for which he brings suit. At that time plaintiff was not considered sufficiently experienced to be placed in full charge of the machine, and was still under the supervision and instruction of an expert workman; he was, however, working in accordance with the instructions given him, and was at the time carrying out the orders of his superior to "fill up" the machine.

Plaintiff's call for help brought to his assistance fellow workmen, who, upon attempting to stop the machine, found the foot treadle out of order, and the clutch securely fastened by a piece of wire in such manner as to prevent its use, which necessitated sending an employee to the engine room, and the shutting off of the power from all machines in the plant before plaintiff's hand could be removed from between the rollers.

The assignments of error are twenty-three in number. The first seven refer to the admission of testimony of witnesses relating to the feasibility of using safety devices on finishing-machines of the kind in use in defendant's establishment, such as guard-rails to protect against injury, and attachments by which the machines can be speedily stopped. We see no error in receiving

this testimony. That a finishing-machine is dangerous machinery is clearly established by the testimony, and that such machines should be equipped with all safety devices in ordinary use necessarily follows; whether the machine in question was or was not properly equipped in this respect, or could not reasonably be used for the purpose for which it was intended with such attachments were questions for the jury: Wagner v. Standard Sanitary Mfg. Co., 244 Pa. 310. This is especially true in this case for the reason that attached to the machine at which plaintiff was employed was a stopping appliance, which unknown to plaintiff was fastened by wire in such manner as to prevent its use, and made impossible the disconnecting of the machine from the power shaft.

The assignments based on the refusal of the court to affirm defendant's ten points are without merit. The questions covered by these requests were fully discussed, and correctly passed upon by the trial judge in his charge, as the points called for instructions practically contrary to those given in the general charge; an affirmance of any one of them would have constituted reversible error. The objections urged to the quoted portions of the court's charge cannot be sustained; a careful examination of the criticised portions of the instructions given the jury fails to show error. On the contrary, the charge as a whole fully and correctly instructed the jury upon the three points on which negligence of defendant was claimed, namely: (1) failure to properly instruct plaintiff, an inexperienced man, in the operation of the machine and its dangers, (2) whether or not the apparatus was defective in not having attached to it a safety rail and stopping appliance, and (3) the duty cast upon both plaintiff and defendant by the accumulation of the slippery powder on the floor of the room in which plaintiff was working. These three questions were fully and correctly discussed by the court as was also plaintiff's contributory negligence, and the case

fairly left to the jury to determine whether defendant was negligent in the respects complained of, and also if plaintiff was guilty of contributory negligence.

The assignments of error are overruled and the judgment affirmed.