MARTIN v. EAGLE PICHER LEAD CO.
et al.
Nos. 718–723.

District Court, W. D. Missouri, W. D.
Oct. 22, 1937.

Louis N. Wolf, of Joplin, Mo., and Sylvan Bruner, of Pittsburg, Kan., for plaintiff.

McReynolds & Flanigan, of Carthage, Mo., A. C. Wallace, of Miami, Okl., and George E. Phelps, of Carthage, Mo., for defendants.

REEVES, District Judge.

This case was filed in a state court and removed to this court by the corporate defendant, a nonresident of the state of Missouri, on the twofold ground that no cause of action was stated by the averments of the petition which sought to fix liability on account of negligence connected with an occupational disease, and for the additional reason that there was a separable controversy.

The petition charges that the corporate defendant is engaged at Joplin, Mo., "in the business of manufacturing, smelting and refining lead and lead products", that the personal defendants were managers, officers, directors, foremen and vice principals of the corporate defendant, "and as such, had charge, direction and supervision of the work and the men employed by the defendant corporation in the manufacture and production of lead and lead products at said company's place of business in Joplin, Missouri."

Plaintiff avers that he was employed by the corporate defendant in the year 1925, and continued such employment "until about November 1932, at its plant and place of business located on 'Smelter Hill' in Joplin, Missouri."

It is asserted that during the period of his employment "he was directed and required by said defendants to work in the following departments, bag room, litharge, mill room and white lead department * * * that in the doing of said work, large and dangerous quantities of noxious, harmful and poisonous dusts, gases, smoke and fumes were produced, created and in which he was directed and required to work was constantly ladened with said substances, consisting in lead dusts, gases, smoke and fumes, by reason of the performance of said processes and work."

It is further stated that these conditions prevailed at all times about the entire plant of the corporate defendant and that the poisonous gases even invaded the "eating quarters."

There was the further statement "that said harmful, noxious and poisonous lead dusts, fumes and smoke were blown into the room in which the plaintiff was directed to work from all adjacent departments."

There follows a general averment to the effect that all of the personal defendants "had charge, control and supervision over the plaintiff and his work and directed the plaintiff in the manner of doing the work." He further says that "all of said defendants knew the conditions and circumstances as aforesaid and under which plaintiff worked, and knew that by requiring plaintiff to work in said places where said noxious, harmful and poisonous lead dusts, fumes, smoke and gases were produced, created and generated that plaintiff would be required to and did breathe, inhale and absorb said poisonous, harmful and noxious substances, and that by so doing plaintiff's health would likely be greatly and seriously weakened and impaired, and that the cumulative effect of said inhalations and absorptions would produce the dangerous and deadly disease of lead poisoning."

Following the above averments of conditions prevailing in the factory or plant where the plaintiff worked, he charges "that the defendants negligently and carelessly failed to warn the plaintiff of the danger of inhaling and absorbing said noxious, harmful and poisonous dust," etc.

There were other averments to the effect that the defendants, and each of them, knew of the dangers, but failed to use ordinary care to minimize or lessen the hazards of the place where the plaintiff worked. He says that complaints were made concerning conditions, "but said defendants and all of them, negligently neglected and refused to furnish plaintiff with an adequate and sufficient respirator and assured plaintiff that working under said conditions would not hurt him, and said defendants negligently and carelessly ordered and directed plaintiff to proceed with his said work and to work under said conditions. * * *"

There were many other averments touching negligence which might be designated under the all-comprehensive name of common-law negligence. In addition thereto, there are averments which undertake to set forth negligent violation of named Missouri Statutes requiring the installation and use of safety devices.

After the separate allegations of negligence the petition then contains the general averment to the effect "that each and every one of the foregoing negligent acts and omissions of each and every one of the defendants operated jointly and concurrently to, and did cause plaintiff to contract lead poisoning by the continual and gradual absorption of said noxious and poisonous substances aforementioned."

It is to be observed that two points are made in the petition for removal as well as in the briefs submitted: (a) The nonliability of a master for diseases contracted as an incident to the occupation, and (b) a separable controversy as to the nonresident defendant. These will be considered.

1. Counsel put strong emphasis upon the fact that under the common law no liability accrued in favor of a servant contracting a disease incident to the occupation followed by him.

This statement of the law is correct, but the master is not relieved in such cases from the obligation to avoid negligence on his part. In other words, while the employee or servant may assume the risks and hazards of his employment on the theory of volenti non fit injuria, yet he does not assume the perils arising from negligence of the master in connection with his perilous or hazardous employment. Negligence was known to the common law and the fact that it was committed in con-

nection with hazardous employment would not excuse the master.

The petition undertakes to state negligence in connection with employment already hazardous and dangerous. Moreover, it involves each and all of the defendants as participants in such acts of negligence.

2. It is earnestly urged that the safety appliance statutes could only be violated by the factory owner. This could not be the law for the reason that a corporation acts only through its agents. Such agents can be negligent within the scope of their authority or employment, and their acts in negligently performing the statutory duties imposed upon the master would make both liable for injuries suffered by employees. The petition states that the acts of alleged negligence were committed by each of the defendants and that their several acts "operate jointly and concurrently to" injure the plaintiff.

In view of the foregoing, the motion to remand should be sustained, as the federal court would be without jurisdiction. It is so ordered.

The facts being the same in cases numbered 719, 720, 721, 722, and 723, the same order is hereby made with respect to them.