STEINER et al. v. SPENCER.—145 S. W. (2d) 547.

Middle Section. May 11, 1940.

Petition for Certiorari Denied by Supreme Court, December 14, 1940.

Trabue, Hume, Davis & Gale and J. T. McCary, all of Nashville, for plaintiffs in error Steiner and others.

Jay G. Stephenson and W. Barry Pendleton, both of Nashville, for defendant in error Spencer.

CROWNOVER, J. This suit was instituted by the plaintiff, H. L. Spencer, to recover damages for injuries arising from an occupational or industrial disease—lead poisoning, contracted while in the employ of the Cumberland Battery Company, as a result of its negligence.

The Cumberland Battery Company manufactures storage batteries for automobiles, in which lead plates are used. In the preparation of the plates dust is raised which contains fine particles of lead. Their plant was not equipped with suction fans, etc. The plaintiff, Spencer, contracted lead poisoning while an employee.

The declaration contained two counts. The first count was based on averments of common-law negligence as follows: That the company did not furnish him a reasonably safe place to work; that they negligently failed to equip their factory with the necessary safeguards for the protection of the employees; that he was compelled to work in a

room the air of which was heavy with lead dust; that the company knew or should have known of the dangerous character of the dust; that he did not know that it was dangerous, and was not warned by the company; that as a result of the company's negligence he contracted lead poisoning.

The second count was based on the averment that the defendants were violating Code, sec. 5340 (Tennessee Workshop and Inspection Act), which requires that every factory where work is carried on which produces dust, etc., shall be equipped with exhaust fans, pipes, hoods, to remove such dust.

The defendants pleaded the general issue of not guilty.

The case was tried by the judge and a jury. At the close of the plaintiff's evidence, and again at the conclusion of all the evidence, the defendants moved the court for peremptory instructions in their favor, which motions were overruled.

The jury found in favor of the defendants on the first count of the declaration, and returned a verdict of $1,500 in favor of the plaintiff, against the defendants, on the second count, and judgment was entered accordingly.

The defendants' motion for a new trial was overruled, and they appealed in error to this court, and have assigned errors as follows:

(1) There is no evidence to support the verdict under said second count of the declaration, and the court erred in refusing to direct a verdict in favor of the defendants.

(2) The court erred in charging the jury as follows: "On the contrary, I charge you that if you find that there was not a substantial compliance with the statute and its several provisions, and you should further find that the plaintiff Spencer knew of the danger incident to his employment, and if you should further find that the plaintiff wilfully failed and refused to observe reasonable rules for his safety, then this fact must be considered by you and a proper deduction must be made from the amount of damages you would otherwise allow. So, if his injury, that is, his becoming ill from lead poisoning, was the direct and proximate result of his carelessness in failing to obey and use other appliances, then that must be taken into consideration by you under the second count in the declaration and a proper deduction must be made from the amount of the damages you would otherwise allow."

(3) The Court erred in not setting aside the verdict of the jury under the second count of the declaration, under the statute, because the jury had found in favor of the defendants under the common-law count.

Code, sec. 5340, is as follows: "Every factory, workshop, association, or other establishment where a work or process is carried on by which dust, filaments, or injurious gases are produced or generated, that are liable to be inhaled by persons employed therein, the person

by whose authority the said work or process is carried on shall cause to be provided and used, in said workshop, factory, association, or establishment, exhaust fans, conveyors, receptacles, or blowers with pipes and hoods extending therefrom to each machine, contrivance or apparatus by which dust, filaments, or injurious gases are produced or generated; or provide other mechanical means to be maintained for the purpose of carrying off or receiving and collecting such dust, filament, devitalized air, or other impurities as may be detrimental to the health of those in or about, or in connection with, such place as herein mentioned. Provided, that if natural ventilation sufficient to exclude the harmful elements above enumerated be provided, the requirements of this section shall have been complied with by such firm, corporation, association or other establishment as herein mentioned. Said fans, blowers, pipes and hoods shall be properly fitted and adjusted and of power and dimensions sufficient to effectually prevent the dust, filaments, or injurious gases produced or generated by said machines, contrivances, or apparatus from escaping into the atmosphere of the room or rooms of said factory, workshop, or other establishment, where persons are employed." (1919, ch. 110, sec. 10.)

Morris Steiner and Harry Lightman, as partners, operate the Cumberland Battery Company, which is engaged in manufacturing batteries for automobiles. The plates of the batteries are lead.

H. L. Spencer, the plaintiff, removed to Nashville from Dickson County. He was about thirty-four years old and in good health. He had worked on the State highways and had operated a saw mill while in Dickson County. In Nashville he was employed by the defendants. He was what was called a "group burner." His duties required him to break lead plates apart (they were cast two in a mold, fastened together in the center), then to set a group of them in a rack and solder or "burn" them together.

In breaking the plates apart and working on them a dust was created which contained fine particles of lead and oxide of lead, poisonous to human beings when inhaled.

The room in which he worked was not equipped with the exhaust fans, blowers, pipes and hoods required by the statute, Code, sec. 5340, to be installed in such shops, where the natural ventilation was not sufficient.

The room was 35 by 92 feet. Practically the entire front was composed of doors and windows. There were two doors at the rear end of the room, each 6 by 12 feet, and four skylights, each about 5 feet square. These windows, etc., were kept open when the weather would permit. An ordinary 30-inch fan was installed in the front end of the room, and one at the "group burner" bench.

The defendants supplied each employee with a respirator or mask to be worn over the nose and mouth, containing cotton fibre to catch the dust, and instructed them to wear them. They also instructed

the employees not to eat anything or smoke cigarettes while at work or until they had washed all dust from their hands. They also instructed them to take a hot shower bath each afternoon before leaving the shop, using a special type of soap, which was furnished, in order to remove all lead dust from their bodies.

The plaintiff admitted that he smoked while at work, in violation of the rules, sometimes ate candy while at work, and was. careless about bathing. But he insisted that there was not always enough hot water. He admitted that he only occasionally wore a respirator, but insisted that he could not breathe with one on well enough to carry on the work. The sub-foreman, the foreman, and the partners all knew that he was not wearing a respirator.

The partners composing the Battery Company knew that lead poisoning could be caused by breathing the dust formed by lead particles, such as was produced in this workshop.

It appears that when Spencer first went to work for the company he did not know about the danger of lead poisoning. But he was told by his employers to be careful about inhaling the dust or getting it in his mouth and about washing it off in the afternoon when quitting work. But he was not informed of the serious character of lead poisoning. The other employees also informed Spencer about lead poisoning. He knew the danger of it but did not appreciate its character or extent.

Spencer became sick in February, 1938, after he had been employed by the company almost a year; he went to work there in March, 1937.

This suit was instituted March 3, 1938.

Several other employees contracted lead poisoning at about the same time that Spencer did.

An occupational or industrial disease is a disease caused by, or especially incident to, a particular employment. 71 C. J., 599, sec. 357.

Occupational diseases are not within the scope of the Workmen's Compensation Law in Tennessee. Code, sec. 6851 et seq.; Morrison v. Tennessee Consolidated Coal Co., 162 Tenn., 523, 39 S. W. (2d), 272.

Such diseases were unknown to the common law. Martin v. Eagle Picher Lead Co. (D. C.), 21 F. Supp., 142; Connell v. Fisher Body Corp., 56 Ga. App., 203, 192 S. E., 484; Adams v. Acme White Lead & Color Works, 182 Mich., 157, 148 N. W., 485, L. R. A., 1916A, 283, Ann. Cas., 1916D, 689; Industrial Commission v. Brown, 92 Ohio St., 309, 110 N. E. 744, L. R. A., 1916B, 1277.

But an employee has a right of action at common law for a disease arising from his employment through the negligence of his employer. Martin v. Eagle Picher Lead Co. (D. C.), 21 F. Supp., 142; Connell v. Fisher Body Corp., 56 Ga. App., 203, 192 S. E., 484, and cases

cited; Nashville Bridge Co. v. Hudgins, 23 Tenn. App., 677, 137 S. W. (2d), 327.

█ An employee is not presumed to have scientific knowledge of the causes of occupational diseases.

In the case of Price v. New Castle Refractories Co., 332 Pa., 507, 3 A. (2d), 418, 422, the court said: "Although the decedent in the present case may have been aware of the presence of the dust in the factory, it is extremely doubtful that he was conscious of the real risk involved—the danger of the contraction of silicosis. Such a degree of scientific knowledge is not to be attributed to an ordinary factory employee. In Wagner v. H. W. Jayne Chemical Co., 147 Pa., 475, 23 A., 772, 30 Am. St. Rep., 745, where the employee suffered injuries from inhaling nitric acid fumes, it is said (page 479, 23 A., page 773) : 'Neither is there anything in the employment of a common laborer that presupposes any scientific knowledge, such as a knowledge of the properties of acids, or that poisonous fumes are likely to be evolved in a manufacturing process in which nitric acid is used; and for that reason the law does not presume that such laborer either possesses or professes such knowledge.' This reasoning may well be applied to the present case with the result that such a defense [assumption of risk] is without avail."

"An obligation rests upon an employer to acquaint his employee with the dangers which can be ascertained by a knowledge of scientific principles governing substances and processes used in the employment, and to which in his ignorance the employee will otherwise be subject." 18 R. C. L., 571, sec. 78; Brown v. Tennessee Consol. Coal Co., 19 Tenn. App., 123, 144, 83 S. W. (2d), 568, and cases cited.

█ In Tennessee the master is liable in damages if he fails to take the necessary precautions to prevent his employee from contracting a disease incident to or caused by his employment, the master being required to exercise due care to discover the danger of such a disease, and to inform his employee of the danger. Brown v. Tennessee Consol. Coal Co., 19 Tenn. App., 123, 83 S. W. (2d), 568; Nashville Bridge Co. v. Hudgins, 23 Tenn. App., 677, 137 S. W. (2d), 327.

There were two counts in the declaration in this case: one, for common-law negligence; and one, for violation of the statute for the protection of employees in such a factory. The jury found against the plaintiff on the common-law count. The case before us is one on the statutory count.

1. The principal question before this court is whether there is any evidence that the defendant company violated Code, sec. 5340.

The defendants admitted that the room in which the battery plates were soldered was not equipped with "exhaust fans, conveyors, receptacles, or blowers with pipes and hoods extending therefrom to

each machine," but they insist that the natural ventilation produced by doors, windows, and skylights was sufficient.

The evidence for the plaintiff was that the natural ventilation was insufficient; that the men worked in a "fog" of dust; that there was a cloud of dust around the work bench that looked like smoke.

The jury found that the defendants had violated the statute, Code, sec. 5340, and there is evidence to support the verdict.

The defendants contend that Spencer's illness is not the result of an occupational disease contracted while in their employ.

Three doctors testified for the plaintiff that he was suffering from lead poisoning. One doctor testified for the defendants that he did not have lead poisoning.

It was, therefore, a question for the jury whether he was suffering from lead poisoning or some other disease.

There is no contention that there is no causal connection between the employment and the disease. His symptoms were those of lead poisoning, but the company's doctor testified that similar symptoms might be caused by pyorrhea.

If it is shown that the employer has failed to comply with the requirements of the statute and that an illness or disease peculiar or incident to the work has been contracted by the employee as the result thereof, then the employer is liable in damages therefor. Brown v. Tennessee Consol. Coal Co., 19 Tenn. App., 123, 83 S. W. (2d), 568; Marsh v. Industrial Accident Commission, 217 Cal., 338, 18 P. (2d), 933, 86 A. L. R., 563; Smith v. Harbison-Walker Refractories Co., 340 Mo., 389, 100 S. W. (2d), 909; Price v. New Castle Refractories Co., 332 Pa., 507, 3 A. (2d), 418.

The plaintiff's suit was instituted within a year after his employment began.

However, the company's failure to provide means of removing the dust from the factory, as required by the statute, was a continuous tort, beginning with the plaintiff's employment and ending at the time of his total disability caused by inhaling the dust, and the Statute of Limitations would not have begun to run until the time of his total disability. Tennessee Eastman Corp. v. Newman, 22 Tenn. App., 270, 121 S. W. (2d), 130.

2. The defendants insist that the plaintiff was guilty of contributory negligence in refusing to wear a respirator, in smoking while at work, and in being careless about washing the lead dust from his body on leaving the shop in the afternoon; and that the trial judge erred in charging the jury that if they found that the plaintiff was guilty of wilful contributory negligence, this fact must be considered by them and a proper deduction must be made from the amount of damages they would otherwise allow. The defendants insist that contributory negligence is a complete defense to the suit, and the trial judge should have so charged the jury.

■ The Tennessee Workshop and Factory Inspection Act (Acts 1919, ch. 110; Code, sec. 5340) contains no provision excluding the defense of contributory negligence, nor do the terms of the Act exclude it by implication, therefore the employer is not precluded from relying on this defense. 39 C. J., 818, 819, secs. 1030, 1031.

The authorities are not in accord on the question of the defense of contributory negligence in an action for injuries caused by a violation of the statute. 18 R. C. L., 634, sec. 130; Stern v. Great Island Corporation, 250 App. Div., 115, 293 N. Y. S., 608. But the question is settled in Tennessee, and our courts have held that notwithstanding the employer's noncompliance with the statute he may yet defend by showing that the employee was himself negligent in such a way as to have contributed to the occurrence. Queen v. Dayton Coal, etc., Co., 95 Tenn., 458, 32 S. W., 460, 30 L. R. A., 82, 49 Am. St. Rep., 935; Highland Coal & Lumber Co. v. Cravens, 8 Tenn. App., 419.

"Contributory negligence of the employee, as distinguished from voluntary assumption of risk, is a complete defense to an action based upon the violation of the Act involved [an Act similar to the Tennessee Act]. Smith v. Philadelphia Rubber Works Co., 248 Pa., 494, 94 A., 232; Hoffman v. Brentmore Knitting Mills, 252 Pa., 337, 97 A., 474. Defendant's principal contention in this regard is that decedent neglected to use the dust mask with which he was provided. Plaintiff's witnesses testified that no workable masks were supplied, since those furnished were unfit for use. If decedent operated the machine without the mask at times when the fan and exhaust pipes were not functioning, his conduct in so doing undoubtedly would have constituted contributory negligence, barring this action. Again this is a question of fact for the jury to decide under the evidence." Price v. New Castle Refractories Co., 332 Pa., 507, 3 A. (2d), 418, 422.

■ The trial judge should have charged the jury that if they found that the plaintiff was guilty of contributory negligence, which was the proximate cause of the injury, the plaintiff could not recover; provided, of course, he was properly warned and appreciated the dangerous condition of the work.

■ Assumption of the risk is not a defense to an action for damages for violation of the statute. American Zinc Co. v. Graham, 132 Tenn., 586, 179 S. W., 138.

■ The plaintiff insists that the question of contributory negligence was not raised in the lower court, but the defendants filed a plea of not guilty and there was some evidence on the question of contributory negligence, and the assignment of error of the defendants as to the charge of the trial court raised the question.

■ 3. We think there is nothing in the third assignment of error, as the jury was misled by the judge's charge, as hereinabove discussed. Under the charge as to the common-law count the jury evidently found

that the plaintiff assumed the risk and therefore could not recover. But, under the second or statutory count, the judge erroneously charged the jury that if they found that the plaintiff was guilty of wilful contributory negligence they should reduce the damages. Hence, we think this assignment is immaterial.

It results that the defendant Battery Company's second assignment of error is sustained, and the judgment of the lower court is reversed, and the cause is remanded to the Circuit Court for a new trial. The costs of the appeal are adjudged against the plaintiff Spencer. The costs of the cause that accrued on the lower court will await the final determination of the case.

Faw, P. J., and Felts, J., concur.