ALLEN GRAVEL CO. *v.* CURTIS.

(Division B. May 20, 1935.)

[161 So. 670. No. 31678.]

W. C. Sweat, of Corinth, for appellant.

Jas. A. Cunningham and J. E. Cunningham, both of Booneville, and J. C. Jourdan, Jr., of Iuka, for appellee.

420

Argued orally by **W. C. Sweat**, for appellant, and by **Jas. A. Cunningham**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

This is an appeal from a judgment for seven thousand dollars against the appellant in favor of the appellee for an injury to the appellee, Curtis, received in the employment of the appellant, resulting in silicosis and tuberculosis. Appellant, the Allen Gravel Company, owns a gravel pit in Tishomingo county, Mississippi, and has, for a number of years, been engaged in mining and shipping gravel to be used principally in the construction of roads and other purposes for which gravel is used. In the early part of 1930, the Allen Gravel Company installed a rock-crushing machine to crush rock too large to be used in road construction. The rock to be crushed was picked up by a steam shovel and dropped into a hopper above the crusher and went down through the mouth of the machine into the crusher. The rock, after being crushed, was carried by an endless chain and dumped into cars for shipment. Curtis, for a number of years, had been an employee of the Allen Gravel Company. During the year 1930, from about the 1st of April to November, he worked practically all the time at the rock-crushing machine and usually was in the cab where the rock went into the machine to be crushed, for the purpose of seeing that no iron or other foreign substances got into the machine. This cab was ten or twelve feet square, and eight or ten feet high, and had a door and two windows in it. During the dry times when the machine was being operated, large quantities of dust were created by the crushing of the rock, and those who worked around this machine, includ-

ing Curtis, the appellee, naturally had their eyes affected thereby, and the breathing of this dust also affected the mouths and noses of the employees. After Curtis had been working there a few months he developed a cough and experienced pains in his chest. He finally procured medical attention and abandoned the particular employment, but continued in the service of the company in another capacity. However, he gradually grew worse, and the physician diagnosed his condition as tuberculosis brought on by silicosis, and the physicians familiar with silicosis testified that it was a disease brought on by breathing large quantities of silica over a period of years, but sometimes developing in a much shorter time, and in fact there were cases where it had been contracted in less than a year. Curtis' lungs showed clearly the presence of silica in large quantities. The testimony was to the effect that this could be discerned by X-ray pictures.

The assignment of error here is that there was insufficient testimony to sustain the verdict, and it is argued that the appellant and the appellee had equal opportunities to know and to judge of the effect of the dust upon the lungs.

The appellee offered the former manager of the appellant to show that the appellant had a chemical analysis made of the silica in the gravel, and that it contained eighty-eight per cent silica. The former manager testified that it was sent to a reputable chemical company, and that said company sent a report of its finding of silica, but the court, on objection, excluded this because they did not produce the man who made the analysis to testify that it was properly and accurately made.

There was also testimony on the part of the appellee showing that there was a simple appliance called a respirator which, if furnished to the employees and used by them, would prevent their breathing the dust, and

that this appliance could be purchased for two dollars and fifty cents and could be kept in condition at the nominal cost of approximately one cent a day.

There was no testimony showing that this appliance was used in the vicinity of the gravel plant, but the method of protecting employees engaged in similar work at other points was shown. The proof showed that the respirator could be used; that it was a safety device and was used at other points; and that there were also other appliances to blow the dust away from the employees, which materially reduced the hazards.

There is no dispute, as we understand it, as to silica dust being a dangerous agency when breathed into the human system, and as to its having been investigated and studied by numerous medical authorities, and by the United States government, and reports published which are available upon that subject. The manager testified that he did not know the effect of breathing silica and paid no attention thereto, or words to that effect.

The rule is that the master must use reasonable care to provide a safe place for his employees to work. He is not an absolute insurer of the safety of the place, nor is he required to use the highest degree of care, but he should take reasonable precautions to make the place of work reasonably safe.

In the recent case of Benjamin v. Davidson-Gulfport Fertilizer Co., 169 Miss. 162, 152 So. 839, we dealt with a character of work slightly different from the case at bar. There a person was employed to unload a car of phosphate and dump it into a mixing pit, and the unloading caused a thick cloud of dust which was inhaled by the appellant to such an extent that it caused him to have bronchial pneumonia resulting in his death. One of the counts charged failure of the appellee to furnish deceased with a respirator to protect him from breathing this dust, and the other count was based on the failure of the ap-

pellee to furnish the deceased with a reasonably safe place to work. The court there held that it was a question for the jury on the facts òf that case as to whether there was negligence resulting in the appellant's death, or whether the appellee knew, or with reasonable care, should have known, that inhaling such dust was injurious, and that the furnishing of a respirator would have prevented the injury.

In the case of American Sand & Gravel Co. v. Reeves, 168 Miss. 608, 151 So. 477, it was held that a master is charged with knowledge of ordinary dangers to which employees are exposed, and with knowledge of constituents and nature of substances used in his business.

In the case at bar, the appellee testified that he did not know of the dangers peculiar to silica dust until he secured medical advice, and that, upon being advised that it was dangerous, he thereupon abandoned that particular employment.

In 39 C. J., page 490, sec. 604, it is stated that, ''The master's liability in respect of warning and instructing his servant depends upon his knowledge, actual or constructive, of the defect or danger to which his servant was exposed, and negligence cannot be imputed to him unless he knew, or ought, in the exercise of reasonable and ordinary care and diligence, to have known, that a warning was necessary. . . . Regarding the duty to warn employees of the hazards of the work, the master is charged with knowledge of the usual and ordinary dangers and hazards to which he is exposing his employees and is bound to know the normal condition of his premises, and to know of the nature of the constituents and general characteristics of the substances used in his business, so that he can give directions for the conduct thereof with ordinary safety to his servants performing the work with ordinary care; and particularly is the master chargeable with a knowledge of risks as-

certainable only through a knowledge of scientific facts which an uneducated man is not presumed to know; the doctrine that imputes this knowledge to the master is called the 'assumption of skill,' and for the purpose of determining this knowledge the law has a standard which does not vary with the actual capacity of the particular master, and consequently, his ignorance is no excuse for a failure to warn; on the other hand it is not proper to make the question of excusing the master for not discovering latent defects turn on the point whether they were such as to deceive human judgment, and the master will not be held liable for a failure to warn where his opportunity for knowledge of a danger is no greater than that of the servant. A knowledge of conditions indicative of dangers as to which a warning should be given may be charged to the employer where similar occurrences have taken place, or where his foreman or other representative has knowledge of the facts. As to dangers arising merely from the manner in which servants perform their duty, amounting to transitory perils, the master is not chargeable with notice thereof, nor is he charged with knowledge of extraordinary risks and hazards so as to impose upon him the duty to warn his servant concerning them.''

In 18 R. C. L., page 571, in discussing the subject, it is said, ''But an obligation rests upon an employer to acquaint his employee with the dangers which can be ascertained by a knowledge of scientific principles governing substances and processes used in the employment, and to which in his ignorance, the employee will otherwise be subject.'' See Adams v. Grand Rapids Refrigerator Co., 160 Mich. 590, 125 N. W. 724, 27 L. R. A. (N. S.) 953, 136 Am. St. Rep. 454, 19 Ann. Cas. 1152; Cishowski v. Clayton Mfg. Co. et al., 105 Conn. 651, 136 A. 472; Harvey v. Welch, 86 N. H. 72, 163 A. 417.

These authorities and others cited impel us to hold that the master was under the duty to make reasonable inquiry as to the dangers incident to the operation of the machinery, and that such reasonable inquiry would have disclosed to the master the dangers to which the appellee in this case was exposed.

The medical testimony is ample to show the dangers, and the general recognition of such dangers in the medical profession, and that such dangers could have been easily ascertained. The public is interested in the preservation of health, and when others engage in business for profit which is dangerous to the health of its employees, reasonable care should be taken to minimize the dangers. Where simple devices may be obtained at a reasonable cost, the master should procure them for the protection of his employees. While the master does not have to use all the latest devices that may be obtainable, he should exercise care to make the place safe, using reasonable care as a standard.

In the case at bar, the jury was warranted in finding that there was negligence on the part of the master and in returning the verdict for the appellee. There is no complaint as to the amount of the verdict, and the only question for decision is whether the appellant should have had a peremptory instruction. We think the appellant was not entitled to such an instruction, and the judgment is affirmed.

Affirmed.