DECIDED JULY 16, 1937.

*W. H. Harris, C. L. Shepard,* for plaintiff.
*Park & Strozier,* for defendant.

## 26133.  CONNELL *v.* FISHER BODY CORPORATION.

DECIDED JULY 16, 1937.

*Poole & Fraser,* for plaintiff.
*James A. Branch, Thomas B. Branch Jr.,* for defendant.

MACINTYRE, J.  Jesse C. Connell brought the present action against the Fisher Body Corporation.  The court sustained a general demurrer, and the plaintiff excepted.  The petition alleged in substance that the defendant was engaged in the manufacture of bodies for automobiles, and maintained a manufacturing plant for that purpose; that the petitioner went to work in the wood shop of the defendant on September 1, 1928, and continued to work for the defendant until about October 29, 1935; that until September 1, 1934, he was a strong and able-bodied man and was in excellent health; that "in said wood shop and adjacent to the work bench where your petitioner was required to work, there was a circular saw operated by electricity, which was continuously used in sawing wood, and . . the operation of said circular saw caused a terrific amount of dust to fill the air in and about your petitioner and caused your petitioner to breathe the air which was filled with particles of dust;" that "said particles which your petitioner was forced to breathe irritated the lining of your petitioner's lungs

and caused your petitioner to contract the disease of tuberculosis;" that defendant did not furnish petitioner with any guard for his nose or mouth, and did not furnish him with any mask; that said room in which he was required to work was improperly ventilated; that the defendant failed to provide for the proper circulation of air, and did nothing to prevent the congestion of dust in said room; that it did not furnish or provide any suction-pipe or other device for the removal of said dust; that it did not warn the petitioner about the danger of continuously inhaling dust in his lungs, and he did not know of the danger thereof; that the defendant well knew of said danger and failed to take the precautionary measures to prevent the petitioner from contracting tuberculosis; and that he did not know of the danger of his employment or of the possibility of contracting tuberculosis. He charged that the defendant was negligent, (1) in failing to furnish him a safe place to work; (2) in failing to adopt and promulgate proper rules for his protection from the dust; (3) in failing to warn and instruct him of the dangers incident to his employment; (4) in failing to furnish proper tools and equipment for the operation of his work; (5) in failing to provide proper ventilation and circulation of air, so as to take away such dust; (6) in failing to provide petitioner with glasses, mask, or other protection to prevent his inhaling such dust; (7) though knowing the danger of his employment and the probability of his contraction of tuberculosis, in continuing to fail to furnish proper safeguards to prevent his contraction of that disease.

The present case is both interesting and important. In an amicus curiæ brief we are warned of the wide door which would be opened to claims for injury to health of employees if we should hold the defendant liable in this case. We have carefully considered the authorities touching on the questions presented, and confess that it has been difficult for us to arrive at our decision. The injury sustained by plaintiff is a disease commonly known as tuberculosis, which he alleges he contracted because of certain conditions of his employment. A disease so arising is commonly referred to as an "occupational disease." In not a few authorities we find the statement that an action for an occupational disease would not lie at common law. In McCreery v. Libby-Owens-Ford Glass Co., 363 Ill. 321 (2 N. E. (2d) 290), in denying a recovery

to an employee for a disease known as pneumoconiosis, which was alleged to have been brought about by inhaling dust in the plant of the defendant in the production of gas, and the master was alleged to have been negligent in failing to warn the employee of the danger of inhaling the dust, and was negligent in failing to provide him with a safe place to work, in that there were no proper suction fans or other reasonable apparatus installed, or masks or respirators to be worn, the court said: "It is a long-established rule of common-law origin that an employer must furnish his employee a reasonably safe place in which to work. An examination of the cases in Illinois and at common law which support this rule discloses that it is based upon decisions involving accidental injuries rather than occupational diseases. Reflection makes it apparent that this must be so, because occupational diseases were unknown to the common law. The weakness of the argument lies in its failure to distinguish between a 'safe' place to work and a 'healthful' or 'sanitary' place in which to work. One searches in vain for any precedent at common law establishing any duties as to healthfulness or sanitation." In this connection see Parks v. Libby-Owens-Ford Glass Co., 360 Ill. 130 (195 N. E. 616) ; Vogel v. Johns-Manville Products Cor., 363 Ill. 473 (2 N. E. (2d) 716) ; Adams v. Acme White Lead &c. Works, 182 Mich. 157 (148 N. W. 485, L. R. A. 1916A, 283, Ann. Cas. 1916D, 689) ; Twork v. Munising Paper Co., 275 Mich. 174 (266 N. W. 311) ; Ewers v. Buckeye Clay Pot Co., 29 Ohio App. 396 (163 N. E. 577) ; Industrial Com. v. Brown, 92 Ohio St. 309 (110 N. E. 744) ; Industrial Com. v. Monroe, 111 Ohio St. 812 (146 N. E. 213) ; Gordon v. Travelers Ins. Co. (Tex. Civ. App.), 287 S. W. 911; Miller v. American Steel &c. Co., 90 Conn. 349 (97 Atl. 345). In so far as these cases refer to an occupational disease as one which arises from causes incident to the profession or labor of the employee's occupation or calling, having its origin in the inherent nature or mode of work of the profession or industry, and being the usual result or concomitant thereof in spite of due care on the part of the employer, we agree with the principle thus announced. However, in so far as it may refer to a disease which arises purely from the negligence of the employer, we have no difficulty in giving our dissent thereto. Blackstone (book 3, pp. 120, 122) says: "As to injuries which affect the personal security of individuals,

they are either injuries against their lives, their limbs, their bodies, *their health,* or their reputation. . . Injuries affecting a man's health are where, by any unwholesome practice of another, a man sustains any apparent damage in his vigor or constitution."

That a disease brought about by the negligence of another person was a compensable injury at common law seems to be well supported by the authorities. In Jones *v.* Rinehart & Dennis Co., 113 W. Va. 414 (168 S. E. 482), the deceased employee was a laborer in the employ of defendant, in charge of the construction of an underground tunnel. It was alleged in the petition that because of the presence of great quantities of silica dust in the tunnels, which the deceased was required to breathe, he contracted the disease of silicosis and died. The employer was charged with negligence in failing to furnish a safe place to work, failure to employ experienced foreman, failure to adopt and promulgate proper rules, failure to instruct and warn the decedent of dangers incident to his employment, failure to provide proper tools and equipment, and failure to provide circulation of air. The court said: "That, at common law, employees have right of action against employers for accidental injuries received by employees in the course of their employment through negligence of the employer, can not be gainsaid. The reports abound in such cases. But the question with which we are more vitally concerned is whether such right exists for damages arising from disease contracted in the course of employment through the negligence of the employer. We find it stated that at common law an employee has no right of action for injury arising from occupational disease. Adams *v.* Acme White Lead &c. Works, supra, cited in Industrial Commission *v.* Brown, supra. We understand that holding to mean that such right of action does not exist in the employee merely because he has contracted disease as an incident of his employment, in the absence of a showing of negligence on the part of the employer, because such disease may arise in spite of due care of the employer to prevent it being contracted by the employee. In such circumstances it becomes a risk of the employment which an employee, sui juris, must be presumed to have taken upon himself. But that an employee has a right of action at common law for disease arising from his employment through the negligence of the employer seems clear." Citing Smith *v.* International High Speed Steel

Co., 98 N. J. L. 574 (120 Atl. 188); Szalkowski v. Osborne Co. (N. J. C. Ct.), 154 Atl. 611; Trout v. Wichwire &c. Cor., 195 N. Y. Supp. 528; Jellico Coal Co. v. Adkins, 197 Ky. 684 (247 S. W. 972); Donnelly v. Minneapolis Mfg. Co., 161 Minn. 240 (201 N. W. 305); Wagner v. Jayne Chemical Co., 147 Pa. 475 (23 Atl. 772, 30 Am. St. R. 745); In re Maggelet, 228 Mass. 57 (116 N. E. 972). "A terse and succinct statement of the rule appears In re Hurle, 217 Mass. 223 (104 N. E. (Mass.) 336, L. R. A. 1916A, 279, Ann. Cas. 1915C, 919). 'At common law the incurring of a disease or harm to health is such a personal wrong as to warrant a recovery if the other elements of liability for tort are present.'"

An employer is therefore equally liable to an employee for a disease contracted by the employee in the course of his employment, where such disease was brought about by the negligence of the employer, as well as for personal physical injuries brought about by his negligence. "The doctrines which directly define the liability of employers for injuries received by employees while doing the work were not fixed or formulated in that period of English jurisprudence upon which we have based the jurisprudence of this State; for the first action in England against an employer for injuries to his servant was decided in England in 1837, long after the period as to which this State adopted the prevailing law in England as the general outline of its legal system; so that it has been necessary for the courts in the latter days to formulate these doctrines by applying the general common-law principles to the particular transactions as they appear from time to time in the cases brought against employers for injuries to employees. Practically all of what we call the law of master and servant consists merely in the specific application of general common-law doctrines to the concrete facts and relationships as they appear in the actions brought before the court." Braswell v. Garfield Cotton-Oil Mill Co., 7 Ga. App. 167 (66 S. E. 539). It would therefore be just as reasonable to say that at common law no action lay against an employer for injuries sustained by his employee in the course of the performance of his duties, as it would be to say that at common law no action could be maintained against an employer for disease contracted by the employee in the course of the performance of his duties. One of

the non-assignable duties of the master is that of providing the servant a reasonably safe place in which to work. He is bound to make reasonable provision for the protection of the servant against dangers to which he is exposed while engaged in the work he is employed to perform. These are well-established principles, and need no citation of authorities. The employer is not an insurer of the safety of his employees, and is bound only to the exercise of reasonable care in this connection. However, it is just as much the duty of a master to use reasonable care to protect his servants against dangers of the employment which may reasonably be expected to produce disease as it is to use reasonable care to protect his servants against dangers of the employment which may produce physical injuries. "The public is interested in the preservation of health; and when others engage in business for profit which is dangerous to the health of its employees, reasonable care should be taken to minimize the dangers. Where simple devices may be obtained at a reasonable cost, the master should procure them for the protection of his employees. While the master does not have to use all the latest devices that may be obtainable, he should exercise care to make the place safe, using reasonable care as a standard." Allen Gravel Co. *v.* Curtis, 173 Miss. 416 (161 So. 670).

Thus, while we are prepared to uphold the right of the plaintiff to maintain an action for disease contracted in the course of his employment and through the negligence of the master, we are, on the other hand compelled to hold that the judge properly held the present petition subject to demurrer. A servant not only assumes the ordinary risks of his employment, but he assumes all obvious risks, or risks which he could know of by the exercise of ordinary care and diligence. He can not consent to expose himself to an obvious risk or one which he should know of by the exercise of ordinary care, and then recover damages which arise as a result of such exposure. The plaintiff alleges that there was a circular saw next to his work bench, and that it caused "a teriffic amount of dust to fill the air in and about" him, and that breathing this dust irritated the lining of his lungs and caused him to contract the disease of tuberculosis. He does not allege, nor do we construe his petition to mean, that the dust thus breathed actually furnished the germ which causes tuberculosis. He thus in effect

insists that while the disease was not directly lodged in his body through any want of care on the defendant's part, its business was carried on in breach of its duty to take reasonable care of its servants; that its breach of duty was so long continued as to lower his resistance to infection, by causing an irritation of his lungs; and that by reason thereof the tubercular germs were able to find lodgment in his body and to begin and carry on their destructive work to its present stage. It is a scientific fact and a matter of common knowledge that every person is daily subjected to tubercular germs, that they always lurk in our bodies, and that we escape their destruction only through the disease-resisting power of our bodies. The presence of the dust in the air in and about the plaintiff must be taken to have been obvious to him, as well as the fact that he breathed it into his nose and lungs. Nothing to the contrary being alleged in the petition, the plaintiff must be presumed to be a man possessing ordinary intelligence, judgment, and discretion. It is inconceivable to this court that a man possessing ordinary intelligence would not know that to inhale dust is deleterious to health, and therefore subjects him more readily to infection by disease germs. This is in effect the nature of his complaint; and we are of the opinion that he assumed the risk.

Moreover, there is an entire absence of an allegation that he could not have discovered the danger to his health by the use of ordinary care and diligence. In our judgment we are bound by the decision of this court in *Webb* v. *Tubize-Chatillon Cor.*, 45 *Ga. App.* 744 (165 S. E. 775). There the facts were somewhat similar to those in the case sub judice; and the court held that the "petition failed to show that the plaintiff had a right of action at common law, and was properly dismissed on demurrer." If the risk complained of as having caused the damage sought to be recovered was obvious (and we have held that it was, under the allegations of this petition), then of course there would be no duty on the part of the employer to warn the employee of the danger. "In an action by a servant against a master for alleged failure of duty on the part of the latter in not giving to the servant warning of a danger incident to his employment, it must appear that the master knew or ought to have known of the danger, and that the servant injured did not know and had not equal means

with the master of knowing such fact, and by the exercise of ordinary care could not have known it. If the danger be obvious and as easily known to the servant as to the master, the latter will not be liable for failing to give warning of it." *Hendrix* v. *Vale Royal Mfg. Co.*, 134 *Ga.* 712 (68 S. E. 483). Nothing herein ruled is in conflict with the decision in *Covington* v. *Berkeley Granite Cor.*, 53 *Ga. App.* 269 (185 S. E. 386). That case appeared before this court on demurrer based solely on the ground that the workmen's compensation act excluded a common-law action of this character by an employee against his employer; and this court certified that question to the Supreme Court. See, *Covington* v. *Berkeley Granite Cor.*, 182 *Ga.* 235 (184 S. E. 871). The Supreme Court answered that the workmen's compensation act did not so exclude a common-law action for such injuries. In then preparing its decision to conform to the answer of the Supreme Court, this court did say that the "amended petition set out a cause of action, and the court erred in dismissing the action on demurrer." However, this judgment must be construed in connection with the question presented; and when so taken, the only non-obiter ruling made was that the petition was not subject to the demurrer urged.

*Judgment affirmed.* *Broyles, C. J., and Guerry, J., concur.*