## 27408. SIMOWITZ *et al. v.* REGISTER.

DECIDED JUNE 1, 1939.

*Bussey & Fulcher,* for plaintiff in error.

*Lee, Congdon & Fulcher,* contra.

SUTTON, J. Florence Reed Register filed suit against S. Simowitz and J. Simowitz, a partnership trading as Marilyn Slipper Shop, alleging, in the petition as amended, that she was employed by the defendants from May, 1936, to August 15, 1937; that on August 15, 1937, they required her to come to work for the purpose of arranging stock and taking inventory in their store in Augusta, Georgia; that the day being Sunday the store was closed, and the day was extremely hot, and due to the store being closed and without ventilation the air in the store became hot and polluted and filled with dust because of the dusting and arranging of said stock of goods; that the defendants were negligent in not providing her a safe place in which to work, the said store being unsafe for the reason that it was shut tight and not ventilated; that it was extremely hot and without fresh air, and the air therein became contaminated and bad; that the defendants were negligent in not having said store properly ventilated so as to provide her a safe place in which to work; and that as a result of the defendants' negligence and the hot and polluted air caused by their negligence in not having the store properly ventilated, and as a result of their requiring her to work in said store when it was closed, she became ill and fainted and fell, striking her head and suffering certain described injuries for which damages were prayed. The defendants

filed a general demurrer to the original petition, and, after the amendment, renewed their demurrer to the petition as amended, the grounds being that it did not set forth a cause of action against them; that it appeared from the allegations thereof that the risk resulting in the alleged injuries was equally as obvious to the plaintiff as to the defendants, and by the exercise of ordinary care could have been discovered by the plaintiff; that it appeared from the allegations of the petition that the plaintiff and the defendants were engaged together in the violation of a penal statute of the State, namely, in pursuit of their business or the work of their ordinary calling on the Sabbath day, which was inseparably connected with the alleged cause of action, and that the violation of such penal statute was the cause of the alleged casualty and resulting injuries to the plaintiff. The exception is to the judgment overruling the demurrer.

"If there are latent defects in machinery, or dangers incident to an employment, unknown to the servant, of which the master knows or ought to know, he shall give the servant warning in respect thereto." Code, § 66-301. "A servant assumes the ordinary risks of his employment, and is bound to exercise his own skill and diligence to protect himself." § 66-303. "In an action by a servant against a master for alleged failure of duty on the part of the latter in not giving to the servant warning of a danger incident to his employment, it must appear that the master knew or ought to have known of the danger, and that the servant injured did not know and had not equal means with the master of knowing such fact, and by the exercise of ordinary care could not have known it. If the danger be obvious and as easily known to the servant as to the master, the latter will not be liable for failing to give warning of it." *Hendrix* v. *Vale Royal Mfg. Co.,* 134 *Ga.* 712 (68 S. E. 483). "In dealing with the doctrine of the assumption of risks by an employee, the difference between ordinary and extraordinary risks must not be overlooked. Ordinary risks are usually described as being those incident to the business, and do not imply the result of the master's negligence. The expression, 'extraordinary risks,' is generally used to describe risks arising from the negligence of the master, and they are generally held not to be assumed unless they are known or obvious." *Emanuel* v. *Ga. & Fla. Ry. Co.,* 142 *Ga.* 543 (83 S. E. 230). "Although an

employee may have had knowledge, as of a physical fact, of the defective condition of a tool, appliance or place, by reason of which he has sustained an injury, it by no means follows that he must have appreciated the danger to which he was exposed thereby. His general knowledge may not have been such as to give him any conception of the peril. The condition may have appeared perfectly harmless. If this is shown to have been the case, his right of recovery is not defeated, for it is an *appreciation of the danger, not mere knowledge of the defect* by which the danger is threatened, that bars his action. . . When, however, a peril is obvious or so patent as to be readily understood by the employee by the reasonable use of his senses, having in view his age, intelligence, and experience, he will not be heard to say that he did not realize or appreciate it." 18 R. C. L. 694, § 179. "The master is under absolute duty to his servant not only to furnish him a safe place in which to work, but also to warn him of any unusual or newly developed dangers which arise in the course of the employment and which are likely to escape an ordinarily prudent servant's knowledge under the circumstances. . . The servant may, without creating an imputation of negligence against himself, rely upon the master's performance of these duties until such time as he shall discover, or, in the exercise of ordinary diligence, should discover, that there has been a failure in this respect, upon the master's part." *Southern Cotton-Oil Co.* v. *Gladman, 1 Ga. App.* 259 (58 S. E. 249). "Of course, if as a matter of fact a servant knows of the creation or of the existence of the abnormally dangerous condition, or in the exercise of ordinary diligence should know of it, his relation to it is similar to what it would be if the hazard were a normal one." Id.

It is inferable from the petition as amended, properly construed, that the unwholesome condition of the air in the store did not exist when the plaintiff first entered, but that during the process of dusting and arranging the stock the pollution of the air resulted after an unnamed interval. This much is evident from the allegation that the store "became" hot and polluted and filled with dust. It could not be said that from that time she was not aware of the *conditions*, the physical facts; but the question still remains whether or not she should have also known, in the exercise of ordinary diligence, that such conditions were abnormally danger-

ous to the extent that in remaining so exposed throughout the day, or a part thereof, she was subjecting herself to a danger which would be attended with injury which she could not avoid by the exercise of due care and caution. It could not be said as a matter of law that the plaintiff, who was accustomed to work during week days under normal conditions, presumably safe and familiar to her, should be equally cognizant with the master as to the danger attendant upon the extraordinary or abnormal conditions prevailing on the special occasion. The master had, or should have had, full knowledge of the building, its construction, and the situation that would result from the doors being closed. The servant was under no duty to inspect the premises to determine the hazard, and could take it for granted that the master would not give her an order which would expose her to unusual danger not already assumed by her in her regular and normal employment. Quoting from Labatt's Master and Servant, § 439, it was said in the *Gladman* case, supra: "Although the circumstances, when abstracted from the facts of the giving of the order, may be such as to justify a court in holding that the servant appreciated the danger to which his injury was due, and was negligent in subjecting himself to that danger, such a conclusion is, in a large number of instances, not warrantable, if the testimony goes to show that the immediate occasion of his being subjected to that danger was his compliance with the order. The effect of this doctrine is that, where the servant, in obedience to an order, performs a duty which, though dangerous, is not so dangerous as to threaten immediate injury, or where it is reasonably probable that the work may be safely done by using more than ordinary caution or skill, he may recover, if injured. It will be seen that this rule when analysed, amounts to nothing more than a statement that in determining what is ordinary care on the part of a given individual, all the circumstances of his position should be regarded, including, in cases like the present, the servant's orders, the demands of his duty, the apparent risk to be met, and the purpose of his action, no less than his physical surroundings. Having weighed all these considerations, unless the case then discloses that the risk was such as would not be taken by a man of common prudence, so situated, the court can not justly declare that the taking of that risk by the servant in obedience to orders was negligence. The practical result of such a doctrine when

stated in terms of the servant's knowledge is that the servant may maintain an action, unless he not only knows what is the risk to be encountered, but also that it will probably be attended with injury which he can not avoid by the exercise of care and caution."

We do not think that it could be said, as a matter of law, that under the facts alleged the plaintiff should, upon detecting the hot and polluted condition of the air, have known that by carrying out the order of her master and remaining at her work she would suffer injury and damage. The petition as amended sets out a cause of action, and presents questions for the determination of a jury. Such questions will not be concluded by the court except in plain and indisputable cases. *Connell* v. *Fisher Body Corporation*, 56 *Ga. App.* 203 (192 S. E. 484), cited and relied on by counsel for plaintiffs in error, is distinguishable on its facts. There the servant performed work at a bench adjacent to which was a circular saw operated by electricity, which "caused a terrific amount of dust to fill the air in and about" the plaintiff, and he continued to expose himself to the dust-laden air for a long period of time and contracted tuberculosis. To say that the present case is controlled by the *Connell* case would be to say that it should be held as a matter of law that it would be abnormally dangerous for a healthy person to work one day under the conditions there shown.

It is contended by the plaintiffs in error that by remaining at her post the plaintiff consented to the tort, and that under the Code, § 105-1803, no recovery can be had. The plaintiff was ordered to render services on the day in question, and was made conscious of the fact that the air in the store had become hot and polluted by dust, but, as knowledge of a physical condition is not necessarily knowledge of a danger, the act of the plaintiff in obeying the order of the master did not amount to a consent to be injured.

The further contention of plaintiffs in error that the violation of a penal statute, namely, working on the Sabbath day, was the proximate cause of the injury is likewise without merit. The effect of hot and polluted air in a closed store was independent of the fact that the work was being performed on Sunday. *Hughes* v. *Atlanta Steel Co.*, 136 *Ga.* 511 (71 S. E. 728, 36 L. R. A. (N. S.) 547, Ann. Cas. 1912C, 394).

*Judgment affirmed. Stephens, P. J., concurs. Felton, J., dissents.*