29765. BLAIR *v.* FULTON BAKERY INC.

DECIDED MARCH 6, 1943.

*James L. Flemister, W. Paul Carpenter,* for plaintiff.
*Shelton, Pharr & Long,* for defendant.

BROYLES, C. J. E. C. Blair sued the Fulton Bakery Inc. to recover damages for the alleged negligence of the defendant in failing to furnish him with a "safe and healthy place in which to work." The defendant demurred generally and specially to the petition, and the court, without passing upon the special demurrers, sustained the general demurrer; and the only exception is to that judgment.

880

The following statement of the substance of the petition is deemed sufficient to illustrate the question for decision: On October 21, 1940, the defendant employed the plaintiff to work as a baker in its bakery business. At that time the defendant was a strong, healthy, able-bodied man thirty-four years of age. He began working at said employment on that date, and continued to do so until August 2, 1941. He was in excellent health during that time and remained so until he contracted typhus fever on August 2, 1941, when he "was forced to stop work and be removed to his home where" he was confined to his bed for eight weeks. Within a month after he began working for the defendant, he noticed "certain old and unused machinery and pieces of metal piled . . in a disorderly manner in the . . bakery building adjacent to the department . . in which petitioner worked." He requested the defendant to remove said machinery and pieces of metal "in order to have a neat place in which to work," and defendant repeatedly promised to do so, but never did comply with its promise. About two weeks before plaintiff contracted typhus fever two named employees of defendant were stricken with the same disease, and both of them had to stop work and receive medical attention. At about the same time plaintiff was stricken with said fever another employee of the defendant contracted that disease and had to stop work. At no time did defendant notify plaintiff that said first two employees had been stricken with typhus fever, though defendant knew of that fact and plaintiff did not know thereof until after he had contracted the fever.

Paragraph 14 of the petition follows: "Petitioner shows that typhus fever is a disease which can only be contracted through . . the bite of a flea which had previously been a parasite living on . . a rat. When the rat having said fleas upon it dies the fleas then leave the body of said dead rat and seek out a live being on which to live and secure nourishment from said being's blood stream. Said fleas are minute and too small to be seen by human eyes, and petitioner avers that at no time did he see or know of the presence of said fleas." After plaintiff became ill with said fever he learned that "defendant had . . contracted with people who were skilled and in.the business of killing and exterminating rats to spread . . rat poison to kill rats that lived and bred in defendant's bakery." The defendant negligently allowed the

rats killed by said poisoning to remain under said "machinery and bits of pieces of metal." As the direct and proximate result of the defendant's so doing plaintiff "was bitten by a flea or fleas from said dead rats and contracted . . typhus fever." Plaintiff is "uneducated and without knowledge concerning the exterminating of rats, . . or the consequences of killing said rats, . . and the allowing of said dead bodies of rats remaining in the proximity of human beings, even if petitioner had knowledge that rats were being killed and the bodies allowed to remain in the premises wherein he worked, was negligence. However, petitioner did not know this fact. Petitioner shows that through the exercise of ordinary care . . he could not have learned or ascertained the dangers accompanying conditions as heretofore set out." Said conditions existing in defendant's bakery "had not existed in any other place or location where petitioner went or spent any of his time."

Paragraph 23 of the petition avers that "defendant knew the danger and consequences of killing rats and allowing bodies of the same to remain in its bakery building, or, by the exercise of ordinary care through the employing of scientific and skilled people in the exterminating and killing of rats, [should have known?] what the consequences and dangers created by the killing and allowing bodies of rats to remain in its bakery building [were]." Paragraph 24 of the petition alleges that plaintiff "was never informed that said dead rats remained . . . in the bakery building wherein he worked, or the possibility or likelihood of contracting typhus fever, even though other employees of defendant had previously contracted typhus fever to the knowledge of defendant." Paragraph 25 of the petition avers that "by reason of the facts herein, defendant failed and refused to furnish . . petitioner a safe and healthy place in which to work." Paragraph 26 alleges that "defendant used no measure or precautions and promulgated no rules for the protection or control against the contracting of typhus fever." The petition further avers that plaintiff contracted typhus fever as "the sole, direct, and approximate result of defendant's negligence as hereinbefore set out."

Paragraph 34 alleges that the defendant was negligent in the following particulars: " (a) In failing to furnish petitioner a safe and healthy place in which to work. (b) In failing to remove

the bodies of the dead rats killed in defendant's bakery building by defendant. (c) In failing to inform petitioner that other employees of defendant had previously contracted typhus fever. (d) In failing to advise petitioner of his danger of the possibility of contracting typhus fever. (e) In failing to install and maintain safeguards and building protection to prevent rats from entering and living in defendant's bakery building wherein petitioner worked."

This action is based upon the alleged negligence of the defendant in failing to furnish the plaintiff with "a safe and healthy place in which to work." "The employer is not an insurer of the safety of his employees, and is bound only to the exercise of reasonable care in this connection. However, it is just as much the duty of a master to use reasonable care to protect his servants against dangers of the employment which may reasonably be expected to produce disease as it is to use reasonable care to protect his servants against dangers of the employment which may produce physical injuries." *Connell* v. *Fisher Body Corporation,* 56 *Ga. App.* 203, 208 (192 S. E. 484). "The master is bound to exercise ordinary care in furnishing the servant a safe place in which to work. The servant must exercise like care in discovering any defects therein." *Chenall* v. *Palmer Brick Co.,* 117 *Ga.* 106 (4) (43 S. E. 443); *Norris* v. *American Railway Express Co.,* 156 *Ga.* 150, 153 (118 S. E. 686). "While a master may be liable for an injury to his servant resulting from the master's negligence, although the master, in the exercise of ordinary care, could not have foreseen that his negligence would result in an injury of the particular kind produced, or in the particular servant being injured, yet he can not be held liable unless the injury sued for was the natural and probable result of his negligence. He is not liable unless, by the exercise of ordinary care and diligence, he could have reasonably apprehended that his negligence would or might result in injury to some one of his servants." *Southern Cotton-Oil Co.* v. *Shields,* 23 *Ga. App.* 476 (98 S. E. 408). "In determining what is proximate cause the true rule is, that the injury must be the natural and probable consequence of the negligence, such a consequence as under the surrounding circumstances of the case might and ought to have been foreseen by the wrong-doer as likely to flow from his act." *Southern Ry. Co.* v. *Webb,* 116 *Ga.* 152, 156

(42 S. E. 395, 59 L. R. A. 109); *Alford* v. *Zeigler*, 65 *Ga. App.* 294, 300 (16 S. E. 2d, 69.). "The employer is not bound to foresee and give warning of remote, improbable, and exceptional occurrences; his duty is limited to such perils as reasonably are to be anticipated." 18 R. C. L. 571, § 78. On demurrer courts will solve questions of negligence and diligence, and what constitutes the proximate cause of the injury complained of, only in plain and indisputable cases. *Columbus R. Co.* v. *Moore*, 29 *Ga. App.* 79 (1) (113 S. E. 820); *Martin* v. *McAfee & Co.*, 31 *Ga. App.* 690, 695 (122 S. E. 71).

Paragraph 14 of the petition alleges that "typhus fever . . can only be contracted through and by the bite of a flea which had previously been a parasite living on and getting its nourishment from the body of a rat." Paragraph 19 avers that, "as the direct and approximate result of defendant's negligence in killing and allowing said dead rats to remain under the machinery and bits of metal as set forth hereinbefore, . . he was bitten by a flea or fleas from said dead rats and contracted . . typhus fever." This latter paragraph sets out specifically the negligence alleged to have been the proximate cause of the plaintiff's contracting typhus fever. Since a petition must be construed most strongly against the pleader, we think that the averment in paragraph 14 that "when the rat . . dies, the fleas *then leave* the body of said dead rat and seek out a live being on which to live and secure nourishment from said being's blood stream" (italics ours), should be held to mean that the fleas left the bodies of the rats immediately, or very shortly after, the rats died. But, in any event, to require of the defendant the duty of finding each dead rat and removing its body from the bakery before the fleas could leave the bodies, would be very much like demanding that the defendant do an impossible thing.

Furthermore, it is alleged in paragraph 14 of the petition that "said fleas are minute and too small to be seen by human eyes and petitioner avers that at no time did he see or know of the presence of said fleas." If this be true, how could it be concluded that the defendant should have known of the presence of the fleas? Neither the averment in paragraph 23 of the petition that "defendant knew the danger and consequences of killing rats and allowing bodies of the same to remain in its bakery building, or by the ex-

ercise of ordinary care through the employing of scientific and skilled people in the exterminating and killing of rats [should have known?], what the consequences and dangers" of so doing were, nor that paragraph in connection with any other averment in the petition, constitutes a sufficient allegation that the defendant knew, or by the exercise of ordinary care should have known, that any of the defendant's employees would contract typhus fever by reason of the rats being killed and left in the bakery. And the defendant is not liable unless, by the exercise of ordinary care and diligence, he could have reasonably apprehended that his negligence would or might result in injury to some one of his servants.

This is one of those "plain and indisputable" cases where questions of negligence, including proximate cause, may be determined as a matter of law by the court, and we hold that the general demurrer to the petition was properly sustained.

*Judgment affirmed. MacIntyre and Gardner, JJ., concur.*