ZAJKOWSKI v. AMERICAN STEEL & WIRE CO.

(Circuit Court of Appeals, Sixth Circuit. December 5, 1918.)

No. 3195.

1. MASTER AND SERVANT ⬥256(2)—INJURIES TO SERVANT—OCCUPATIONAL DISEASE—CAUSE OF ACTION.

Petition of servant, employed in operation of finishing rolls for pressing sheets of steel, rendered blind and invalided in his employment, *held* to state facts constituting a cause of action for damages due to an occupational disease incident to work plaintiff was performing.

2. MASTER AND SERVANT ⬥150(2)—INJURIES TO SERVANT—OCCUPATIONAL DISEASES—WARNINGS.

Where an employer continues an employé for a substantial time in work under conditions which, in the absence of precautions, are calculated to engender disease, it is the employer's duty to warn and instruct the employé, and to furnish him with effective means to avoid the danger.

3. MASTER AND SERVANT ⬥94—INJURIES TO SERVANT—OCCUPATIONAL DISEASE—VIOLATION OF STATUTE. .

Under Page & A. Gen. Code Supp. Ohio, § 6330—1, the employer of an operator of finishing rolls for sheet steel was liable for destruction of the health and sight of the operator, caused by the constant glare of strong light on the rolls he was required to inspect; the legal consequences of violating the statute not being limited to the penalty prescribed in section 6330—9.

4. NEGLIGENCE ⬥6—VIOLATION OF PENAL STATUTE.

Where a statute, though penal in character, plainly imposes a duty for the benefit of a class of individuals, a right of action accrues to a person of such class, injured through breach of the duty.

5. MASTER AND SERVANT ⬥376(2)—WORKMEN'S COMPENSATION ACT—OCCUPATIONAL DISEASE.

In view of Const. Ohio, art. 2, as amended September 3, 1912, and in view of Page & A. Gen. Code Supp. Ohio, § 6330—1, the Workmen's Compensation Act of the state (103 Ohio Laws, p. 72, approved March 14, 1913) has no application to the case of an operator of sheet steel finishing rolls, blinded and invalided by the strong glare of powerful lights from the glittering surfaces he had to inspect, an occupational disease.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Action at law by Mike Zajkowski against the American Steel & Wire Company. To review a judgment for defendant, plaintiff brings error. Judgment reversed, and case remanded for further proceedings not inconsistent with the opinion.

We understand the theory of this action to be that it is one to recover damages arising under conditions calculated to cause and causing an occupational disease. The case was disposed of below upon the pleadings and the opening statements of counsel. The petition, a very long one, in substance states: The plaintiff, as an employé of defendant, was for two years occupied in the operation of certain power-driven finishing rolls which with certain dies were used for pressing sheets of steel and forming them into

desired sizes, and in seeing that the sheets of steel as they came from the rolls were of perfect texture and precise dimensions, and, at the same time, measuring the steel in a minute and particular way through the use of delicate measuring instruments. This was done under electric lights of high power and in substantial part maintained about 18 inches above the plane of the steel sheets. The surfaces of the sheets were "almost as bright as a mirror," and the surfaces of the rolls were bright; the sheets were long and as they came from the rolls they were continuously "waiving, shaking, and wobbling," so that there was at all times an intense glare of light, and at times flashes of light cast into plaintiff's eyes. Plaintiff was obliged to strain his eyes to the utmost in order to discover the condition of the sheets with respect to texture and dimensions, irregularities, and scratches. Defendant's foreman found it necessary to use a magnifying glass to inspect plaintiff's work. To produce steel sheets of the quality indicated, they were put through various processes, such as dipping into chemicals and applying oils, grease, and water, before reaching the rolls, and thus plaintiff's eyes, hands, and system became saturated with these substances, so that his health and the sight of both eyes were ultimately destroyed. Meanwhile he notified defendant that his eyesight was becoming "blurred and foggy," and that he could not read the gauging instrument as freely as before. This brought about an examination on the part of defendant's physician; but plaintiff was sent back to his work, and he remained until March, 1916, when he notified defendant that he could not see to do the work; he was thereupon led by defendant's foreman from the premises and "told to go home." In the course of his work he was not provided with goggles or other devices to prevent the splashing of liquids into his eyes or to diminish the strain upon them. Defendant gave him no notice or warning of the dangers of injury to his eyesight or health, nor instructions in that behalf, and he was ignorant of these dangers. He had been in defendant's employ some four years when he was ordered to enter upon the work above described; at the time of entering upon the new work he was possessed of perfect eyesight and health. The disease so contracted was aggravated through the overheated condition of the place in which plaintiff was required to work, and also through extra exertions caused by defects in the machinery and lack of necessary assistance; and plaintiff frequently complained to defendant concerning the defective condition of the machinery, and repeated promises were made to remedy the defects, though these promises were not kept. Damages are claimed in the sum of $50,000.

The answer admits defendant's operation of the plant for the alleged purpose of manufacturing wire and other products, that plaintiff was in its employ as a laborer, denies the other allegations of the petition, and as a further defense avers that it had complied with the Workmen's Compensation Act of Ohio, and that by reason thereof plaintiff is not entitled to maintain the action. It was in effect admitted in the statements of opposing counsel that defendant had complied with the requirements of the Compensation Act.

At the close of the opening statements of counsel and on motion of defendant a verdict was directed in its favor, and judgment entered accordingly, upon which plaintiff below founds the writ of error.

Louis H. Winch, of Cleveland, Ohio, for plaintiff in error.
Wm. L. Day, of Cleveland, Ohio, for defendant in error.

Before WARRINGTON and KNAPPEN, Circuit Judges, and McCALL, District Judge.

WARRINGTON, Circuit Judge (after stating the facts as above). [1] In the view of the learned trial judge, the Workmen's Compensation Act (102 Ohio Laws, p. 524) gave to defendant immunity from any right of action that might otherwise have accrued to plaintiff under the facts alleged in his petition. Laying that act to one side for the

present, we think the petition states facts constituting a cause of action for damages due to an occupational disease which was incident to the work plaintiff was performing. Diseases of occupation have been the subjects of much concern and investigation both abroad and in our own country. Such diseases, of course, signify causes and conditions, whether natural or artificial, which attend the performance of work and injuriously affect the persons exposed. They have been variously defined, such as, for instance, "the poor health which results from working under improper conditions"; again, "disease due to the employment"; and Dr. Thompson, in his recent work on Occupational Diseases, says that such diseases—

"may be defined as maladies due to specific poisons, mechanical irritants, physical and mental strain, or faulty environment, resulting from specific conditions of labor. * * * They arise from a great variety of poisons, irritating substances, and exposure to unusual physical conditions."

The occupation described in the petition extended over a period of more than two years, and the disease complained of developed and progressed by gradual process until it culminated at last in the loss of plaintiff's eyesight and health alike. Plaintiff's trouble was not due to causes outside of the environment of his work, nor was it one of accident or of traumatism in the sense of violence; it was due to causes incident to his service whose effects upon his eyesight and health are alleged to have been unknown to him though within knowledge reasonably imputable to defendant. The instant case is broadly distinguishable from that of Industrial Commission v. Roth, 120 N. E. 172, 16 Ohio Law Rep. 251, 252, 254, to be reported in 98 Ohio St. 34, where Roth, though not a painter, was directed temporarily to do some painting, and died from inhaling poisonous fumes and vapors arising from a bucket of hot paint; and his death was held to be the result of an "accidental and unforeseen inhaling" of a "specific, volatile poison or gas," and not the result of an "occupational disease"; indeed it was said by Judge Donohue in the course of the opinion:

"In this case it is admitted that the deceased was a common laborer, and that the disease of lead poisoning is not incident to his regular occupation, but, on the contrary, is incident to the work in which he was employed for the two days preceding his illness."

[2] The case set out in the petition falls well within principles of the common law. The general rule is that where an employer places and continues an employé for a substantial length of time in the regular performance of work and under conditions which, in the absence of preventive means and precautions, are calculated to engender in the employé a disorder of serious and injurious character, regardless of the name by which the disease is known, it is the duty of the employer to warn and instruct the employé as to the dangers and to furnish him with reasonably effective means to avoid them, and where as the direct result of failure to perform this duty an employé in the exercise of reasonable care suffers injury through a disorder so contracted, he is entitled to recover. Wiseman v. Carter White Lead Co., 100 Neb. 584, 587, 589, 160 N. W. 985; Thompson v. United Laboratories Co., 221 Mass. 276, 280, 108 N. E. 1042; Fox v. Peninsular,

etc., Works, 84 Mich. 676, 682, 48 N. W. 203; Wagner v. Jayne Chemical Co., 147 Pa. 475, 479, 23 Atl. 772, 30 Am. St. Rep. 745; Meany v. Standard Oil Co. (N. J. Sup.) 55 Atl. 653; Pigeon v. Fuller, 156 Cal. 691, 698, 701, 105 Pac. 976.

[3, 4] Furthermore, recognition of the right of recovery upon facts such as are stated in the instant case is found in both constitutional and statutory provisions of Ohio. By amendment of September 3, 1912, to article 2 of the Ohio Constitution (Page's Annotated Constitution [Ed. 1913] pp. 171 to 217, § 35), provision was made looking to the compensation of "workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment," through laws to be passed by the General Assembly; section 35 providing however that—

"No right of action shall be taken away from any employé when the injury, disease or death arises from failure of the employer to comply with any lawful requirement for the protection of the lives, health and safety of employés."

On May 6, 1913, the General Assembly of Ohio passed a statute entitled "An act for the prevention of occupational diseases with special reference to lead poisoning." 103 Ohio Laws, 819 to 824. Section 1 of the act (section 6330—1, Page & A. Gen. Code Supp. Ohio) provides:

"Every employer shall, without cost to the employés, provide reasonably effective devices, means and methods to prevent the contraction by his employés of illness or disease incident to the work or process in which such employés are engaged."

In distinct sections of the same act the manufacture of certain named products of lead is declared to be "especially dangerous," and employers engaged in the manufacture of these products are required to furnish devices and means of specific kinds to avoid the dangers of lead poisoning. Section 9 imposes penalties upon employers for violation of certain sections of the act, including section 1, which are applicable to the particular business in which the offending employer is engaged. Argument is not necessary to show that the purpose of this legislation was to impose upon employers duties designed for the protection of their employés. The effect of the first section, 6330—1, is to charge the employer with the duty to protect employés from the contraction of disease which is incident to the work they are required to perform. The intent plainly is to require the employer, where necessary, to ascertain what "devices, means and methods" are "reasonably effective" to prevent contraction of an occupational disease; and certainly in most instances the employer rather than the lawmaker is qualified rightly to understand what measures are necessary. The class of business occupations thus dealt with manifestly differs from the class of manufactures contemplated by the sections relating to lead products; since the first class would seem to concern work and processes involving dangers not so well known as those attending the manufacture of lead products.

The purpose to impose duties upon employers embraced in the first class as well as the second is accentuated by the imposition of

penalties upon both classes alike; and while there might be greater difficulty in proving an offense under the first class than under the second, the duty is none the less positive in character in the one than in the other. These features derive emphasis in the instant case from the allegations that defendant provided no measures whatever for the protection of plaintiff's eyesight and health. It hardly is necessary to add that the legal consequence of violating section 6330—1 is not limited to the penalty prescribed in section 9 of the act; for the rule is that where a statute, although penal in character, plainly imposes a duty for the benefit of a class of individuals a right of action accrues to a person of that class who is injured through breach of the duty. Variety Iron Co. v. Poak, 89 Ohio St. 297, 303, 307, 106 N. E. 24; N. Y., C. & St. L. R. R. Co. v. Lambright, 5 Ohio Cir. Ct. R. 433, 434; Narramore v. Cleveland, C., C. & St. L. Ry. Co., 96 Fed. 298, 300, 37 C. C. A. 499, 48 L. R. A. 68 (C. C. A. 6); 2 Cooley on Torts (3d Ed.) pp. 1400, 1408, and citations.

[5] We thus come to the ruling below. In considering the petition the District Judge said:

"If it does not state a cause of action under the Workmen's Compensation Law and within the exception of the Workmen's Compensation Law, it does not seem to me that the petition states any kind of cause of action."

We are, however, convinced that this act has no bearing upon the instant case. The act, as the name usually given to it indicates, provides for the collection of a state insurance fund and its disbursement among employés. According to the title of the act, the fund is designed "for the benefit of injured, and the dependents of killed employés" (103 Ohio Laws, 72, approved March 14, 1913). Section 13 defines employers to whom the act is applicable. Section 22 provides for employers' payments of premiums. Section 23 is in part as follows:

"Employers who comply with the provisions of the last preceding section shall not be liable to respond in damages at common law or by statute, save as hereinafter provided, for injury or death of any employé, wherever occurring, during the period covered by such premium so paid into the state insurance fund. * * *"

The saving clause so referred to is found in section 29, which in substance provides that "where a personal injury is suffered by any employé or where death results to an employé from personal injury * * * while in the course of employment," an employer who has paid his premiums shall not be liable unless such injury or death shall have arisen from the "willful act" of the employer or from the employer's failure to comply with any "lawful requirement for the protection of the lives and safety of employés," but in either of the latter events "nothing in this act contained shall affect the civil liability of such employer."

It is to be observed that the act is limited to compensation for "injury" or "death" of employés; it makes no provision in that behalf for disease. We have seen that the Constitution permits the passage of laws providing compensation for employés or their dependents in cases of "death, injuries or occupational disease." Industrial Commission v. Brown, 92 Ohio St. 309, 110 N. E. 744, presented the ques-

tion whether Brown, an employé who had contracted lead poisoning in the course of his employment, was entitled to participate in the fund designed for the compensation of employés under the original Workmen's Compensation Act of May 31, 1911 (102 Ohio Laws, 524), which, of course, was before adoption of the constitutional amendment. Brown applied to the proper official board for compensation and his claim was disallowed; he appealed to the Hamilton common pleas, where he recovered judgment, which necessarily entitled him to be paid out of the insurance fund (section 36, Id. p. 531), and this action was affirmed by the Court of Appeals of the same county, though reversed by the Ohio Supreme Court. The Compensation Act then under consideration, like the present one, provided only for "injuries or death." Section 20—1, 21—2, Id. 528, 529. In the course of the opinion Chief Justice Nichols said (92 Ohio St. 314, 110 N. E. 746):

"It is to be observed that the constitutional amendment differentiates between injuries and occupational disease. It clearly recognizes three distinct classes for which provision may be made: (1) Injuries resulting in death; (2) nonfatal injuries; and (3) occupational diseases—and all are to be limited to such as might be occasioned in due course of employment. The present law specifically provides for compensation for two of these classes only and significantly omits any provision for compensation for the third class. Were this claim one that had accrued under the new law, the court could only construe the passage in dispute, in the light of the Constitution, as wholly excluding any compensation for injury by disease, whether occupational or otherwise. The Legislature would have been within its constitutional rights had it included the third class, and its failure to do so, under the circumstances, makes of it a case of designed omission."

This ruling was approved in Industrial Commission v. Roth, supra, 16 Ohio Law Rep. 253. The case of Roth, like that of Brown, grew out of an application to the proper board for compensation to be paid out of the insurance fund. The claim was disallowed by the board on the theory that Roth had died of an occupational disease, and this denial was in effect affirmed on appeal to the Jefferson common pleas, but was reversed in the court of appeals of that county, and the reversal was affirmed in the Supreme Court on the ground, as we have already pointed out, that Roth had met his death through an "accidental and unforeseen inhaling" of a "specific volatile poison or gas" and not from an "occupational disease"; but the implication is clear that if the death had resulted from that disease the right to participate in the insurance fund would have been denied; indeed it is declared both in the first paragraph of the syllabus and in the opinion (16 Ohio Law Rep. 251, 254) that an occupational disease is "not within the contemplation of the Workmen's Compensation Law." The impelling feature of these decisions, when considered together, is that Brown's claim failed because he was affected by an occupational disease, while Roth's succeeded because his death was not the result of occupational disease, but of an accident.

It results, in view of the controlling authority of these decisions, that the Compensation Act is inapplicable, and, it need not be said, that the exemption from liability given by section 23 of the Compensation Act to employers who comply with the provisions of section 22,

and the exceptions contained in section 29 in relation to employers who are open to the charge of willful acts or failure to perform any lawful requirement within the meaning of that section, are not of present importance. It cannot be that the Compensation Act was designed to take away any right of action as respects a claim, like the one here involved, which the act does not purport to include or to allow to be paid out of the insurance fund. Any view to the contrary must ascribe to the General Assembly at once a purpose to frustrate the power vested by the Constitution in respect of occupational disease and a lack of purpose through section 6330—1 to grant relief of any character to employés contracting such disease. That statute was passed after the Compensation Act, and, as already shown, was intended to create and preserve rights of action where the duty it imposes is violated. For similar reasons the case of Woodenware Co. v. Schorling, 96 Ohio St. 305, 117 N. E. 366, Ann. Cas. 1918D, 318, relied on by the company, is not on its facts relevant. Schorling sustained injuries through the fall of lumber from a car, which clearly brought his case within the Compensation Act; and although his employer had complied with the act Schorling sought recovery by an ordinary action at law. Among the grounds urged was that under section 35, art. 2, of the Constitution, and section 29 of the Compensation Act, sections 15 and 16 of the Industrial Commission Act constitute "lawful requirements" for the violation of which the action could be maintained; but it was in effect held that those sections are not self-executing and must be supplemented by special orders of the Industrial Board. Id. 96 Ohio St. 320, 321, 117 N. E. 366, Ann. Cas. 1918D, 318. Thus the decision in that case, like the scope of the statutes it construed, does not reach the question involved in the instant case. In fact, Judge Johnson said (at page 317 of 96 Ohio St., at page 370 of 117 N. E. [Ann. Cas. 1918D, 318]):

"There is nothing in the Industrial Commission Act which indicates an intention of the Legislature to enlarge or diminish the rights of employés and employers under the Compensation Act, which had then recently been passed."

The Industrial Commission Act was approved March 18, 1913 (103 Ohio Laws, 95, 110), while, as we have said before, section 6330—1 was approved the following May 6th (Id. 819, 824), and no reference was made in the last statute either to the Compensation Act or the Industrial Commission Act. Section 6330—1 stands alone as the latest expression of the legislative will; it is in terms both complete and imperative; it should be given effect.

When it is remembered that plaintiff's action is based upon alleged negligence of defendant and freedom from fault of his own, the conclusion must follow that it was error to deny a right of recovery both under the common law and section 6330—1.

Accordingly the judgment is reversed, with costs, and the case is remanded for further proceedings not inconsistent with this opinion.