CORNELIA G. KENNEDY, Circuit Judge.
 

 Plaintiffs-Appellants Ryan and Cox represent a class certified as those individuals who have filed petitions for bankruptcy listing defendant-appellee Ohio Edison Company as a creditor; whose debts to Ohio Edison have been discharged; and from whom Ohio Edison has, either directly or through defendant-appellees the Akron Credit Bureau, Inc., the Utility Realization Corp., and the Credit Bureau of Newark, Ohio, collection agencies, attempted collection of the listed indebtedness. Appellants allege that even after notifying Ohio Edison of the stay issued by the Bankruptcy Court pursuant to the Bankruptcy Act (11 U.S.C. § 32) and Bankruptcy Rules 401 and 601 they and members of the class have been threatened with termination of utility service if the debts were not paid or have had such service terminated. They seek damages as well as declaratory and injunctive relief from such debt collection, which they assert is in violation of the discharge provisions of the Bankruptcy Act, 11 U.S.C. § 32(f), Bankruptcy Rules 401 and 601, and the Mail Fraud Statute, 18 U.S.C. § 1341.
 
 [1]
 

 
 *1172
 
 The District Court granted appellees’ motion to dismiss for failure to state a claim-upon which relief can be granted.
 
 [2]
 
 It held that the alleged conduct of appellees was not prohibited by the Bankruptcy Act or the Bankruptcy Rules: as a former creditor Ohio Edison was enjoined under Section 14 of the Bankruptcy Act (11 U.S.C. § 32) and Bankruptcy Rules 401 and 601 only from using judicial action to collect on past claims and was free to use other means to collect such debts. It held that the Mail Fraud Statute does not create a private cause of action.
 

 BANKRUPTCY ACT CLAIM
 

 Appellants advance two arguments to support their claim under the Bankruptcy Act: (1) that appellees’ actions are prohibited under the language of section 14(f)(2); (2) that appellants have a private cause of action under the Act since appellees’ actions frustrate the purposes of the Bankruptcy Act which are to give the debtor a fresh start and to give each creditor a proportionate share of the available assets. Appel-lees, by threatening to turn off an essential service, hamper the debtor’s ability to start fresh without hindrance from an old debt and give Ohio Edison a disproportionate share with respect to the other creditors.
 

 Section 14(f)(2) of the Bankruptcy Act provides:
 

 (f) An order of discharge shall—
 

 * * * * * * *
 

 (2) enjoin all creditors whose debts are discharged from thereafter instituting or continuing any action or employing any process to collect such debts as personal liabilities of the bankrupt.
 

 At issue is the proper interpretation of the phrase “employing any process”. Plaintiffs contend that in light of the purpose of the Bankruptcy Act to give the debtor a fresh start, the word “process” should be construed to include any act or conduct. Defendants contend that this phrase is meant only to prevent legal or court process to collect a debt such as garnishment or attachment and not to prevent informal, nonlegal methods.
 
 [3]
 

 The courts that have thus far considered the question have agreed with appellees that section 14(f)(2) only prevents creditors taking judicial action to collect on discharged debts.
 
 See Girardier v. Webster College,
 
 563 F.2d 1267, 1272-73 (8th Cir. 1977) (section 14 does not prevent private college from withholding transcript for failure to pay discharged debt);
 
 Aubertin
 
 v.
 
 Colville Confederated Tribes,
 
 446 F.Supp. 430, 435-46 (E.D.Wash.1978) (Tribe’s withholding of member’s income to pay discharged debt does not violate § 14);
 
 Handsome v. Rutgers University,
 
 445 F.Supp. 1362, 1367-68 (D.N.J.1978) (section 14 does not prevent public university from withholding transcripts for failure to pay discharged debt although Supremacy Clause does);
 
 In re Shenberg,
 
 433 F.Supp. 677 (N.D.Ill.1977) (Bankruptcy Act does not prohibit municipality from shutting off water service for failure to pay discharged debt where a statute compelled the service to be discontinued for failure to pay debts);
 
 Matter of Thompson,
 
 416 F.Supp. 991 (S.D. Texas 1976) (section 14 does not prohibit sending letters to debtor threatening civil and criminal action against him for fraud if debtor did not pay discharged debt);
 
 Binnick v. Avco Financial Services of Nebraska, Inc.,
 
 435 F.Supp. 359, 363 (D.Neb.1977) (section 14 does not prevent setoff of discharged debt); 1A Collier on Bankruptcy ¶ 14.69, at 1453-54 (14th ed. 1978); Kennedy,
 
 The Automatic Stay in Bankruptcy,
 
 11 U.Mich.J.L.Reform 175, 201-02 (1978).
 
 Cf.
 
 
 *1173
 

 Wood v. Fielder,
 
 548 F.2d 216, 219 (8th Cir. 1977) (purpose of 1970 amendments was to prevent creditors from instituting court action on discharged debts and not to change discretion granted to Bankruptcy Court in § 57(d));
 
 McLellan v. Mississippi Power & Light Co.,
 
 545 F.2d 919, 929 (5th Cir. 1977) (no law restrains employer from firing employee because he filed a petition in bankruptcy). Congress did not define “process” in the statute. Some dictionary definitions are supportive of plaintiffs’ more expansive interpretation,
 
 [4]
 
 but the relevant definition is Congress’, not Black’s or Webster’s. Thus, this court must look to the legislative history to determine what Congress meant by “employing any process”.
 
 See Train v. Colorado Public Interest Research Group, Inc.,
 
 426 U.S. 1, 10, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1976).
 

 Section 14(f) was added to the Bankruptcy Act in 1970, but it was not
 
 among
 
 the original proposed amendments. Hearings were held on a proposal to add discharge-ability provisions as well as to create a Bankruptcy Commission which would study the whole bankruptcy area and propose a new structure. The dischargeability bills, H.R. # 6665 and H.R. # 1250, were designed to correct a specific problem which Congress felt could not wait until the proposed Commission completed its studies and made recommendations. The problem that Congress sought to remedy immediately was that although the bankruptcy court could determine that a debtor’s dischargea-ble debts were discharged, it could not determine which debts were so discharged. The state courts would determine if a particular debt was discharged when the creditor sued in state court and the debtor affirmatively alleged the debt was one that had been discharged. Problems arose because of this bifurcated system: creditors received default judgments against discharged debtors because the debtors mistakenly relied upon their discharge and thought they did not have to act, because they did not know what they should do, because they could not afford another law
 
 *1174
 
 yer to represent them in state court after hiring one to represent them in bankruptcy court, or because service was never had on the debtor but was fraudulently signed and returned (dubbed “sewer service”). Problems were also created when state court judges and justices of the peace who lacked an expertise in federal bankruptcy law attempted to apply the Bankruptcy Act. The proposed solution was to simply give the bankruptcy court the jurisdiction to determine which debts were discharged. One court would then handle both the discharge of debts and determine which debts were discharged. Resort to state court would not be necessary, the debtor could use his attorney in the bankruptcy court to handle all actions relating to his debts at one time.
 
 See
 
 Hearings Before Subcommittee Four, Committee on the Judiciary, House of Representatives, 91st Cong., 1st Session, Oct. 1, 1969, at 15, 25-28, 32, 41-42, 46-48, 72-73. [Hereinafter cited as 1969 Hearings.]
 
 See also
 
 2 U.S.Code Cong. & Admin.News, 91st Cong., 2nd Session, at 4156 (1970).
 

 During the hearings, Congressman Wig-gens raised a problem not considered by the drafters of the proposal: even if the bankruptcy court had jurisdiction over the dis-chargeability of claims, what would prevent a creditor suing in state court and the state court judge determining the debt was due? The state court would not know that the debtor was being discharged in bankruptcy and that the bankruptcy court was determining the dischargeability of debts unless the debtor appeared and said so. The proposals would not free the debtor from the obligation from appearing in state court. Mr. Wiggens wanted a provision which would automatically prevent such suits from arising in the state courts.
 
 See
 
 1969 Hearings, at 52-55.
 

 No more was mentioned about this problem but when the National Bankruptcy Conference and the National Conference of Referees in Bankruptcy later proposed a new bill which resolved differences between the two earlier proposals, an amendment to section 14, section 14(f), was added. This new bill, said Lawrence King
 
 [5]
 
 in the cover letter, included suggestions made at the hearings. The accompanying explanatory memorandum stated that creditors, because of the discharge, shall be enjoined from commencing or continuing any actions on discharged debts as personal liabilities of the debtor. Significantly, the memorandum states: “This proposed legislation does not affect in any way a bankrupt’s obligation upon a discharged debt which is subsequently revived by a new promise. In the absence of statutory directive, the case law has permitted enforcement of such new promise made after the commencement of the bankruptcy proceeding.” The next paragraph reiterates that “harassment
 
 lawsuits
 
 should be eliminated and the bankrupt freed of the necessity to retain legal assistance in another court to assert his discharge and to be unburdened from the effects of judgments which today are not rightfully obtained either through default or ‘sewer service’.”
 
 See
 
 1969 Hearings, at 93, 98 (emphasis added).
 

 Mr. Wiggens read this memorandum into the record when the House voted on the measure, which was passed without further discussion.
 
 See
 
 116 Cong.Rec. H9457, Oct. 5, 1970.
 

 No discussion appears why the word “process” was used. At one point during the hearings, however, Mr. Wiggens mentioned that he received complaints that creditors sued in state court, received judgments, and then obtained garnishments, which could cost debtors their jobs.
 
 See
 
 1969 Hearings, at 39.
 

 The word “process” when used elsewhere in the Bankruptcy Act clearly means judicial process. Thus section 2a(15) (11 U.S.C. § ll(a)(15)) provides bankruptcy courts shall have the authority to “Make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this title
 

 
 *1175
 
 If the legislative history of a provision is ambiguous, the court may look to subsequent legislative history for aid.
 
 See Selby v. Ford Motor Co.,
 
 590 F.2d 642 (6th Cir. 1978). The new Bankruptcy Code now provides in 11 U.S.C. § 524(a) that any action, any process, or any act to collect a debt discharged in bankruptcy is prohibited by the discharge order. The revision notes state that the section prohibits “any act, including telephone calls, letters, and personal contacts, to collect, recover, or offset any discharged debt”. Under the new Code, appellees’ actions are clearly prohibited.
 

 The legislative history of the new Code discloses that this prohibition is new. The House Report, Senate Report, and Revision Notes all indicate that section 14 was
 
 expanded
 
 to include informal activities.
 
 See
 
 S.R. 95-989, 5 U.S.Code Cong. & Admin. News, 95th Cong., 2d Session, at pp. 5787, 5866-67 (1978); H.R. 95-595, 5 U.S.Code Cong. & Admin.News, 95th Cong., 2d Session, at pp. 5963, 6321-22 (1978). In addition, a new provision limiting reaffirmations of debts (11 U.S.C. §§ 524(c) & 524(d)) was added only after much debate as a compromise between the House Bill (allowed no reaffirmations) and the Senate Bill (allowed reaffirmations but had a thirty day rescission period).
 
 See
 
 Hearings Before the Subcommittee on Improvements in Judicial Machinery of the Committee on the Judiciary, Senate, 95th Cong., 1st Session, Nov. 28, 29, Dec. 1, 1977, at 578, 619, 652, 656-57, 660, 835, 891, 896-97, 1003, 1180, 1204. [Hereinafter cited as 1977 Hearings.] One witness noted that although the problem of reaffirmed debts existed at the time of the 1970 amendments, it was not considered by Congress at that time.
 
 See
 
 Statement of Lawrence King, 1977 Hearings, at 842.
 

 The legislative history of the 1970 Amendments indicate that the only problem Congress sought to solve was preventing lawsuits in state courts; No other problems were addressed except as problems for study by the proposed Bankruptcy Commission. Indeed, some argued that even the dischargeability provisions should wait for the Commission’s study.
 
 See
 
 1969 Hearings, at 55. Congress was obviously giving immediate relief to a limited problem as a stopgap measure until the Commission could study the bankruptcy area as a whole. No evidence indicates that Congress intended to reach informal measures like defendants’ alleged conduct here before study by the Commission. The legislative history contains no evidence which supports plaintiffs’ expansive reading of the term “process”. Further support for the more narrow reading of the word “process” can be found in the language of the new Code. Section 524(a)(2) prohibits “commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any [discharged] debt”. If “process” included informal activities already, the inclusion of “any act” would have been unnecessary.
 

 Plaintiffs suggest that a private right of action may be implied from the Bankruptcy Act to further the purposes of the Act. The basic purpose of the Bankruptcy Act is
 

 to give debtors “a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.”
 
 Local Loan Co. v. Hunt,
 
 292 U.S. 234, 244 [54 S.Ct. 695, 699, 78 L.Ed. 1230] (1934).
 

 Perez v. Campbell,
 
 402 U.S. 637, 648, 91 S.Ct. 1704, 1711, 29 L.Ed.2d 233 (1971).
 

 The Supreme Court in
 
 Perez
 
 struck down an Arizona statute which prohibited the issuance of licenses to drivers who had not paid tort judgments against them even though these judgments had been discharged in bankruptcy. However, it did so under the Supremacy Clause, which instructs the Court “to determine whether a challenged state statute ‘stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.’ ” 402 U.S. at 649, 91 S.Ct. at 1711. While the court may compel a state to observe the spirit as well as the letter of the law in order to avoid frustrating Congress’ purpose, the court may not compel a private
 
 *1176
 
 party to do more than obey the letter of the law.
 
 See Webster College, supra,
 
 563 F.2d at 1273-74;
 
 McLellan v. Mississippi Power & Light Co., supra,
 
 545 F.2d at 930 n. 57;
 
 Handsome, supra,
 
 445 F.Supp. at 1366.
 

 That acts of public utilities are not ordinarily state action was decided in
 
 Jackson v. Metropolitan Edison Co.,
 
 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 447 (1974) (Douglas, Brennan, Marshall, JJ., dissenting). That case involved a dispute over past due amounts for electrical service which resulted in termination of the service. The petitioner filed suit alleging violation of 42 U.S.C. § 1983. The Court held that as no state action was involved, there was no section 1983 violation. That the utility had a monopoly, that it provided essential services, and that the state authorized the service were not enough to make the public utility an arm of the state. The Court suggested that if a private entity furnished an important state function, its actions might constitute state action, but in
 
 Flagg Bros. Inc. v. Brooks,
 
 436 U.S. 149, 158-59, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) the Court limited this exception to areas exclusively within state control such as elections or maintaining all municipal functions including streets, lights, etc. The present case clearly does not involve state action under this definition and is not controlled by
 
 Perez.
 
 Defendants’ actions are not unlawful under the Supremacy Clause.
 

 Nor do defendants’ actions give rise to a private cause of action under the Bankruptcy Act. The Supreme Court has articulated four factors a court must consider before implying a private cause of action where Congress has not expressly provided for one.
 

 First, is the plaintiff “one of the class for whose
 
 especial
 
 benefit the statute was enacted,” . . . — that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?
 

 Cort v. Ash,
 
 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975).
 

 In the present case, plaintiffs are members of the class Congress meant to benefit. The legislative history indicates a concern for debtors, particularly wage earners.
 
 See
 
 1969 Hearings, at 15, 39. Congress intended to give plaintiffs certain rights with respect to discharged debts, but did not intend to give them the right they
 
 seek
 
 — i.
 
 e.,
 
 to prevent informal methods of collecting discharged debts, even though coercive. The legislative history indicates that Congress did not intend to preclude reaffirmations of debts and only intended to preclude harassing lawsuits. Although implying a private remedy for the relief sought by plaintiffs would be consistent with the underlying purpose of the Bankruptcy Act as it would remove pressures on the debtor and would not infringe on an area traditionally relegated to state law,
 
 [6]
 
 these factors do not outweigh the absence of any intent to create a private right against a
 
 *1177
 
 creditor’s informal methods of collecting on discharged debts.
 

 The Supreme Court has decided that each of the factors in
 
 Cort v. Ash
 
 is not entitled to equal weight. The central inquiry for the court remains whether Congress intended to create, either expressly or by implication, a private cause of action.
 
 Touche Ross & Co.
 
 v.
 
 Redington,
 
 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). In
 
 Touche Ross,
 
 the Court held no private cause of action could be implied from section 17(a) of the Securities and Exchange Act. Plaintiff, as trustee for customers of a brokerage firm which was being liquidated, sued defendant accounting firm for material misrepresentations on accounting reports in violation of § 17(a). The Court distinguished other cases where a private cause of action was implied as cases where the statute in question at least prohibited certain conduct or created federal rights in favor of private parties; 442 U.S. 560, 99 S.Ct. 2479. Section 17(a) was a disclosure provision and did not confer private damage rights nor provide any remedy to the customers of a broker that became insolvent. The Court found further justification for not implying a private cause of action because in other sections of the Security and Exchange Act Congress had provided civil remedies. In other words, Congress knew how to create a private cause of action and could have created a private remedy in section 17(a) in favor of this plaintiff if it had wanted to create such a remedy. Where Congress had provided a civil remedy for misstatements in reports for purchasers and sellers, but not for customers who neither bought nor sold in reliance upon the misstatements, the Court was extremely reluctant to imply a cause of action significantly broader than the remedy Congress chose to provide. 442 U.S. 560, 99 S.Ct. 2479.
 

 The same may be said for the present situation. Here, appellants are asking for the enforcement of a benefit which has not been conferred by the statute to prevent conduct which has not been prohibited by the statute. Congress did provide a benefit — Congress prevented harassing lawsuits. Where Congress has provided a specific provision, the court should not expand the remedy beyond the limits where Congress was prepared to go.
 
 See United States v. Sisson,
 
 399 U.S. 267, 297, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970);
 
 Moragne v. States Marine Lines, Inc.,
 
 398 U.S. 375, 393, 90 S.Ct. 1772, 26 L.Ed.2d 399 (1970);
 
 Webster College, supra,
 
 563 F.2d at 1275;
 
 Lee National Corp. v. Segur,
 
 281 F.Supp. 851 (E.D.Penn.1968);
 
 Cheng Ho Mui v. Rinaldi,
 
 262 F.Supp. 258, 263 (D.N.J.1966),
 
 aff’d,
 
 408 F.2d 28 (3rd Cir. 1969),
 
 cert. denied,
 
 395 U.S. 963, 89 S.Ct. 2101, 23 L.Ed.2d 748 (1969).
 
 Cf. Falzarano v. United States,
 
 607 F.2d 506 (1st Cir., Oct. 2, 1979);
 
 Cedar-Riverside Associates, Inc. v. City of Minneapolis,
 
 606 F.2d 254 (8th Cir. 1979) (both cases holding no private cause of action under the Housing Act of 1949, 42 U.S.C. § 1441
 
 et seq.).
 
 Since Congress had no intention of creating a private cause of action prohibiting the activities of the defendants in this case, this court cannot imply such a private remedy. If Congress had intended to prohibit actions like those of appellees, it could have so provided, as it later did. We affirm the dismissal of the claim under the Bankruptcy Act.
 

 MAIL FRAUD STATUTE CLAIM
 

 Section 1341 of Title 18 provides: Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.
 

 
 *1178
 
 Plaintiffs claim defendants by mailing letters threatening to terminate electrical services for failure to pay discharged debts fraudulently schemed to deprive plaintiffs of their right to discharge in bankruptcy. Defendants claim that no fraudulent misrepresentations were made and, whether or not their actions constitute fraud, plaintiffs do not have a private cause of action under this statute.
 

 Again, this court must look to
 
 Cort v. Ash
 
 to determine whether a private cause of action should be implied. There the Court said:
 

 Clearly, provision of a criminal penalty does not necessarily
 
 preclude
 
 implication of a private cause of action for damages.
 
 Wyandotte Transportation Co.
 
 v.
 
 United States,
 
 389 U.S. 191, 201-202 [88 S.Ct. 379, 19 L.Ed.2d 407] (1967); see also
 
 J. I. Case Co. v. Borak,
 
 [377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964)];
 
 Texas & Pacific R. Co. v. Rigsby,
 
 [241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916)]. However, in
 
 Wyandotte, Borak,
 
 and
 
 Rigsby,
 
 there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone. Here, there was nothing more than a bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone.
 

 422 U.S. at 79-80, 95 S.Ct. at 2088-2089 (footnote omitted) (emphasis original).
 
 See Chrysler Corp. v. Brown,
 
 441 U.S. 281, 316, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979).
 
 [7]
 

 The present case, as did
 
 Cort v. Ash,
 
 involves a bare criminal statute with no indication of any intent to create a private cause of action, in either the section in question or any other section. The legislative history is scant. When first enacted in 1889, the preamble stated: “An act to punish dealers and pretended dealers in counterfeit money and other fraudulent devices for using the United States mails.” Act of March 2, 1889, Ch. 393, 25 Stat. 873. Although the purpose of the Mail Fraud Statute has been read more broadly since that time,
 
 [8]
 
 no court has interpreted the statute to imply a civil remedy under this statute. Several courts have decided that no private right existed under the Mail Fraud Statute,
 
 see Bell v. Health-Mor, Inc.,
 
 549 F.2d 342, 346 (5th Cir. 1977);
 
 Krupnick v. Union National Bank,
 
 470 F.Supp. 1037 (W.D.Pa.1979);
 
 Milburn v. Black frica Promotions,
 
 
 *1179
 

 Inc.,
 
 392 F.Supp. 434 (S.D.N.Y.1974), or that no federal question jurisdiction for a private remedy was created under section 1341,
 
 see Oppenheim v. Sterling,
 
 368 F.2d 516, 518-19 (10th Cir. 1966),
 
 cert. denied,
 
 386 U.S. 1011, 87 S.Ct. 1357, 18 L.Ed.2d 441;
 
 cf. Napper v. Anderson, Henley, Shields, Bradford & Pritchard,
 
 500 F.2d 634, 636 (5th Cir. 1974),
 
 cert. denied,
 
 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (no private cause of action under Wire Fraud Act, 18 U.S.C. § 1343).
 

 The paucity of legislative intent or any other kind of evidence indicating intent to create a private cause of action forces this court to conclude Congress did not intend to create a private cause of action for plaintiffs under the Mail Fraud Statute. Where the court determines that Congress did not intend to create a cause of action, this court need not consider each of the four
 
 Cort v. Ash
 
 factors.
 
 See Touche Ross, supra,
 
 442 U.S. 560, 99 S.Ct. 2479. The district court’s dismissal of plaintiff’s claim under the Mail Fraud Statute must be affirmed.
 
 [9]
 

 AFFIRMED.
 

 [1]
 

 . Plaintiffs had also alleged a claim under 42 U.S.C. § 1985(3), which the District Court held was adequately stated. However, plaintiffs moved to dismiss that claim without prejudice and the court granted plaintiffs’ motion.
 

 [2]
 

 . Ohio Edison asserts that it has not knowingly engaged in the conduct complained of; that its records are maintained in computers by the address where service is provided and that it is unable to cross-check debtors’ names, etc. However, the allegations of the complaint must be accepted as true for the purposes of ruling on a motion to dismiss.
 

 [3]
 

 . Bankruptcy Rules 401 and 601 clearly do not give plaintiffs a cause of action since Rule 401 only stays commencement of actions or enforcement of judgments and Rule 601 stays lien enforcement.
 

 [4]
 

 .Black’s Law Dictionary (Rev. 4th ed. 1968) defines “process” as:
 

 A series of actions, motions, or occurrences; progressive act or transaction; continuous operation; method, mode or operation, whereby a result or effect is produced; normal or actual course of procedure; regular proceeding, as the process of vegetation or decomposition; a chemical process; processes of nature.
 

 Under the sub-heading “Practice”, Black’s continues:
 

 This word is generally defined to be the means of compelling the defendant in an action to appear in court or a means whereby a court compels a compliance with its demands.
 

 Ballantine’s Law Dictionary (Third ed. 1969) defines “process” as:
 

 A method of producing something from raw material. Producing by chemical action, by the operation of some element or power of nature, or by adding one substance to another. . .A series of actions, motions, or occurrences; progressive act or transaction; continuous operation or treatment; a method of operation or treatment. ... In a broad sense, all of the acts of the court from the beginning to the end of an action or proceeding. The means by which the purposes of the law may be applied and executed as between private litigants or as between the state and an accused.
 

 Webster’s International Dictionary (2d ed. 1941) defines “process” as:
 

 1. Act of proceeding; continued forward movement; procedure; progress; advance; or timecourse; lapse.
 

 2. A course of procedure; something that occurs in a series of actions or events.
 

 3. Issuance from a source; emanation.
 

 4 a. Any phenomenon which shows a continuous change in time, whether slow or rapid; .
 

 b. A series of actions, motions, or operations definitely conducing to an end, whether voluntary or involuntary; progressive act or transaction; continuous operation or treatment; a method of operation or treatment
 

 8. Law. The writ or mandate that serves as the means used for bringing a defendant into court to answer in an action or proceeding, civil or criminal; in a broader sense, any writ, order, notice, summons, or other writing by which a court exercises its jurisdiction over the parties or subject matter of any action or proceeding; also, collectively, the whole of such mandates or other writings in an action or proceeding, or, in a still wider sense, the whole course of proceedings (in this sense being essentially equivalent to
 
 procedure
 
 ). . . .
 

 [5]
 

 . Chairman, Committee on Legislation, National Bankruptcy Conference.
 

 [6]
 

 . Article I, § 8, cl. 4 of the Constitution of the United States grants to Congress the power to “establish an uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States”. The Bankruptcy Act provided in section 1(10) (11 U.S.C. § 1(10)) that courts of bankruptcy shall include the United States district courts; in section 2a(12) (11 U.S.C. § ll(a)(12)) that bankruptcy courts have the power to discharge or refuse to discharge bankrupts, set aside discharges, determine the dischargeability of debts, and render judgments thereon; and in section 2a(15) (11 U.S.C. § 11(a)(15)) that bankruptcy courts have the power to make such orders, issue such process, and enter such judgments as may be necessary for the enforcement of provisions of that title. Congress, in determining whether debts are discharged or what the effect of discharge should be, is using one of its powers granted to it by the Constitution. Congress may proscribe any regulations or restrictions concerning discharges in bankruptcy that are not unreasonable.
 
 See Hanover National Bank v. Moyses,
 
 186 U.S. 181, 192, 22 S.Ct. 857, 46 L.Ed. 1113 (1902).
 

 [7]
 

 . Plaintiffs cite
 
 Zajkowski v. American Steel & Wire Co.,
 
 258 F. 9 (6th Cir. 1918), for the proposition that a private cause of action can be inferred from a criminal statute which imposes a duty upon the defendant towards the plaintiff. There, Ohio law provided that employers should provide reasonable means to prevent contraction by employees of illnesses. The court held that as a rule, “where a statute, although penal in character, plainly imposes a duty for the benefit of a class of individuals a right of action accrues to a person of that class who is injured through breach of that duty.” 258 F. at 13. The court held the plaintiff did have a cause of action which was not changed by the Workmen’s Compensation law. However, that case involved inferring a private remedy which already existed at common law from a state statute. The present case involved inferring a remedy under a federal statute. Since there is no federal common law,
 
 Erie Railroad Co. v. Tompkins,
 
 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), federal causes of action must be created by statute either expressly or implicitly. Since no private cause of action was created in section 1341 expressly, this court must apply the
 
 Cort v. Ash
 
 test to determine if a cause of action was impliedly created.
 

 Plaintiffs also rely on
 
 Dann v. Studebaker-Packard Corp.,
 
 288 F.2d 201, 208-09 (6th Cir. 1961), where this court implied a private cause of action from section 14 of the Securities and Exchange Act. However, that case was decided before
 
 Cort v. Ash
 
 and
 
 Touche Ross.
 
 To the extent the Supreme Court has provided a stricter standard for implying private causes of action,
 
 see Touche Ross, supra,
 
 442 U.S. 560, 99 S.Ct. 2479, this court can no longer follow
 
 Dann.
 

 [8]
 

 .
 
 See United States v. Serlin,
 
 538 F.2d 737, 744 (7th Cir. 1976) (statute “is a broad proscription of behavior for purposes of protecting society");
 
 Horman
 
 v.
 
 United States,
 
 116 F. 350, 352-53 (6th Cir. 1902),
 
 cert. denied,
 
 187 U.S. 641, 23 S.Ct. 841, 47 L.Ed. 345 (any scheme calculated to injure another, to deprive him of his property wrongfully, falls within the meaning of “to defraud” under the Mail Fraud Statute).
 
 But see United States v. Edwards,
 
 458 F.2d 875, 880 (5th Cir. 1972),
 
 cert. denied,
 
 409 U.S. 891, 93 S.Ct. 118, 34 L.Ed.2d 148 (“Statutes like the federal mail fraud statute involved here must be strictly construed in order to avoid extension beyond the limits intended by Congress”).
 

 [9]
 

 . Since this court has determined that a private cause of action does not exist under the Mail Fraud Statute, this court need not decide whether the defendants’ actions would constitute a “scheme or artifice to defraud”.